IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | * |  |
|  | * |  |
| v. | * | Criminal Case No.: PWG-13-202 |
|  | * |  |
| LEONALDO HARRIS, *et al.* | * |  |

\* * * * * * * * * * * * *

**MEMORANDUM OPINION AND ORDER**

Defendant seeks to reopen the hearing (which consumed six days of court time, spread over a period of four months) on his motion to suppress, which I denied on the record on May 15, 2014 finding, *inter alia*, that the search of a shipping pallet by a private shipper had not been performed at the government's behest and, therefore, was not covered by the Fourth Amendment. Defendant argues that the hearing should be reopened so that I can consider evidence that "became relevant" only after I issued my prior ruling, and that he had not located until after the hearing. I find that the evidence Defendant identifies relates directly to issues that were fully addressed at the hearing and was available to Defendant at the time, and that the mere fact that he did not then choose to locate or introduce it is not a sufficient basis to reopen the hearing now. Moreover, even were the hearing reopened, the evidence identified in Defendant's motion would not alter my original ruling. Accordingly, I deny the motion.

**I.    BACKGROUND**

The record in this case is particularly lengthy, and the instant motion constitutes the third round of briefing on motion to suppress that, as noted, already has occupied six days of hearings over the course of four months and well over one thousand pages of exhibits. In light of the

length of the record, only those facts most relevant to this motion will be summarized here.[1]

Defendant Leonaldo Harris is charged with seven counts arising out of his alleged possession with the intent to distribute marijuana and related activities. Superseding Indictment, ECF No. 94. Harris initially filed a boilerplate Motion to Suppress Evidence Secured by Search and Seizure, ECF No. 25, on June 7, 2014, which he supplemented by filing a Motion to Suppress and Incorporated Memorandum of Law ("Def.'s Mot. to Suppress"), ECF No. 64, on November 4, 2013 seeking to suppress, *inter alia*, the fruits of a warrantless search of shipping pallets containing a large quantity of marijuana performed by an employee of YRC Freight Company ("YRC"), *id.* at 1. Among the grounds for suppression, Harris argued that YRC, though a private company, performed the search as an agent of the government due to its participation in the Customs–Trade Partnership Against Terrorism ("C-TPAT") program, and that the employee who searched the pallets "*intended* to assist law enforcement through his actions." Def.'s Reply to Consolidated Resp. of the U.S.A. to Def. Harris's and Sims's Pretrial Mots. 2–5, ECF No. 68. Although ordinarily a search by a private actor is not subject to the requirements of the Fourth Amendment, Harris argued that the relationship between YRC and the government implicated the Fourth Amendment and required suppression of the fruits of the search. *Id.* at 3. At that time, the trial in this case was scheduled to commence on April 22, 2014, Letter Order, ECF No. 55, and a pretrial motions hearing was scheduled for January 13, 2014, Paperless Order, ECF No. 63.

On January 12, 2014, Harris filed a letter informing the Court that he had not yet received

---

[1] I note the effort taken by counsel for the Government to present the relevant facts in a manageable form through the efficient use of short, excerpted exhibits alongside clear citations to voluminous original documents and transcripts, which greatly has reduced the difficulty of locating relevant passages without sacrificing context and has facilitated the resolution of the issues raised.

a full response to subpoenas he had served on YRC and its subsidiary seeking information about the nature of its cooperation with Customs and Border Protection ("CBP") through C-TPAT. Letter from Kenneth Ravenell to the Court (Jan. 12, 2014), Resp. of U.S.A. to Def. Harris's Mot. to Reopen the Record and Hearing ("Gov't's Reopen Opp'n") Ex. A, ECF No. 132-1.  The letter asked me either to continue the motions hearing or, in the alternative, to leave it open for further evidence after a full response to the subpoenas was received. *Id.* at 3.  I denied the request for a continuance, Jan. 13, 2014 Tr. 5:22 – 6:1, but at the conclusion of the hearing on January 13, 2014, I gave the parties the opportunity to present further briefing and evidence based on the information produced in response to the subpoenas, *id.* at 268:15 – 269:10.

On March 14, 2014, Harris filed his supplemental brief under seal, accompanied by twenty-one exhibits comprising over 500 pages.  *See* Def.'s Post-Hrg. Supp. Br. ("Def.'s Supp. Br."), ECF No. 86.  The Government responded on March 31, 2014, Resp. of U.S.A. to Def. Harris's Supp. Br. ("Gov't's Supp. Resp."), ECF No. 100, and further proceedings were held on the Motion to Suppress on April 14, 2014.  Criminal Minutes, ECF No 103.  After a full day of testimony was insufficient to complete the hearing, it was continued to the following week, requiring postponement of the trial date.  *Id.*  Further proceedings were held over four more days—April 25, April 29, April 30, and May 15, 2014, Criminal Minutes ECF Nos. 108–111.  Over the six days of hearings, the Court heard testimony from ten witnesses: Clifford Shaw, YRC Corporate Security Manager; Steven Krupinsky, C-TPAT Chief of International Branch; Karl Cruse, the C-TPAT Supply Chain Security Specialist assigned to YRC; Patricia Scott, YRC Border Management Services Analyst II; Barry Brandman, Defendant's expert in C-TPAT and supply chain security; Robert Wood, a YRC Dock Supervisor; Scott Fidler, Pennsylvania State Trooper; Michelle Gage, YRC Credit Risk Manager; James Stull, Homeland Security

Investigations ("HSI") Special Agent; and Tommy Arrowood, the YRC Weights & Inspection ("W&I") Coordinator who actually performed the search and who testified twice.

Following argument from counsel, I issued a lengthy opinion from the bench in which I denied the Motion to Suppress at the close of proceedings on May 15, 2014.  Relying on *Skinner v. Railway Labor Executives' Association*, 489 U.S. 602 (1989), and its progeny, I noted "that the Fourth Amendment protects against search and seizures by private parties when they are acting as agents of the government," a determination that "turns upon the degree of the government participation in the private party's activities" under "the totality of the circumstances." May 15, 2014 Tr. 5:4–15, ECF No. 120.  Based on the evidence produced over the course of the motions hearing, I found that the requirements placed upon YRC "by C-TPAT did not constitute mandated searching," and therefore that its participation in C-TPAT did not render YRC a government agent under the reasoning of *Skinner*. *See* May 15, 2014 Tr. 47:16–21, ECF No. 120.  And although I found that Tommy "Arrowood's credibility was significantly challenged," *id.* at 40:7–8, and that, subsequent to the search that led to these charges, he had accepted money to act as an informant for the Pennsylvania State Police, *id.* at 40:13–18, I was persuaded by the evidence that he was not acting on behalf of the government at the time that he performed the search, *id.* at 40:1–19.  I also found that the bill of lading signed by the sender of the pallets granted consent for YRC to search their contents, so that "the carrier has a right to inspect cargo for the purposes of determining whether or not there is something suspicious or illegal in it" in any event. *Id.* at 43:4–25.

Over a month after my ruling, on June 20, 2014, Harris filed the instant Motion to Reopen the Record and the Hearing for the Purpose of Considering Additional Material Evidence and to Reconsider the Court's Prior Decision on the Motion to Suppress Evidence

("Def.'s Mot. to Reopen"), ECF No. 122.[2]   The Government filed its Response ("Gov't's Reopen Opp'n"), ECF No. 132, on August 5, 2014, and Harris Replied ("Def.'s Reopen Reply"), ECF No. 133, on August 19, 2014. The motion now is ripe and is before me. Having reviewed the filings, and particularly in light of the fact that six days of hearings already have taken place on this issue, I find that a hearing is not required. Loc. R. 105.6, 207.

## II.   DISCUSSION

Harris seeks to reopen the suppression hearing in order to present "New Evidence, Which is Not Publicly Available, [and which] Became Relevant Based on the Court's Decision" in the suppression hearing. Def.'s Mot. to Reconsider 9. At the outset, whether to reopen a suppression hearing is a matter of discretion for the trial court. *See United States v. Dickerson*, 166 F.3d 667, 678 (4th Cir. 1999), *rev'd on other grounds*, 530 U.S. 428 (2000). In exercising that discretion, the Fourth Circuit has noted

> that the district court has a strong interest in controlling its docket and avoiding piecemeal litigation. Thus, when the evidence forming the basis for a party's motion for reconsideration was in the movant's possession at the time of the initial hearing, . . . the movant must provide a legitimate reason for failing to introduce that evidence prior to the district court's ruling on the motion to suppress before we will determine that a district court abused its discretion in refusing to reconsider its suppression ruling.

*Id.* at 679. "Then the timeliness of the motion, the character of the testimony, the effect of granting the motion, and whether the opposing party will be prejudiced by reopening the hearing should be considered." *United States v. White*, 455 F. App'x 647, 541 (6th Cir. 2012). The movant also must show that the evidence sought to be introduced is material—that is, that there

---

[2] The Government contends that the motion is untimely because it was filed beyond the fourteen-day time for motions to reconsider provided for under Local Rule 105.10—and so it was. Gov't's Reopen Opp'n 10. Although this time limit would appear to apply to a motion to reopen a criminal motions hearing by virtue of Local Rule 207, in light of the strong public interest in the fair adjudication of criminal matters, I will consider this motion on the merits as if it had been timely filed.

is a reasonable probability that it would have changed the disposition of the motion to suppress. *United States v. McCoy*, 348 F. App'x 900, 902 (4th Cir. 2009). The standard for reopening a suppression hearing is more permissive than that to reconsider a civil motion under Fed. R. Civ. P. 59(e), and the mere fact "that evidence was available to the movant prior to the suppression hearing does not, as a matter of law, defeat a motion for reconsideration in a criminal case." *Dickerson*, 166 F.3d at 679 (citing *United States v. Regilio*, 669 F.2d 1169, 1177 (7th Cir. 1981)). Other courts have held that "courts should be extremely reluctant to grant reopenings." *United States v. Kithcart*, 218 F.3d 213, 219–20 (3d Cir. 2000) (quoting *United States v. Blankenship*, 775 F.2d 735, 740 (6th Cir. 1985)).

Harris's primary justification for reopening the suppression hearing is to allow him to introduce evidence of an undated PowerPoint presentation titled "Supply Chain Security in a Post 9/11 Environment," ("Supply Chain PowerPoint"), Def.'s Mot. to Reopen Ex. C, ECF No. 122-3. This presentation contains over fifty slides addressing "Air Container Search Procedures," describing where contraband may be secreted within common shipping containers and how to detect it. *See generally id.* According to Harris, this presentation establishes that "C-TPAT not only educated its members on how best to find contraband, it encouraged its members to deliberately open and search the containers in order to do so." *Id.* at 13.

But before I may consider whether the Supply Chain PowerPoint would warrant reopening the suppression hearing, Harris must articulate a "legitimate reason for failing to introduce that evidence" before the initial close of the hearing. *Dickerson*, 166 F.3d at 679. On its face, Harris's claim that the Supply Chain PowerPoint only "became relevant" after I issued my earlier ruling undermines considerably the possibility that it could not have been introduced in a timely fashion. *See* Def.'s Mot. to Reopen 9. According to Harris, "using the Court's

opinion as guidance, the defense consulted with Mr. Barry Brandman, the defense's expert, as to whether there were other documents" relating to C-TPAT that responded to my reasons for denying Harris's Motion to Suppress. *Id.* at 10. But as I previously have noted in the civil context:

> When parties file a motion with the court, they are obligated to insure that it is complete with respect to facts, law and advocacy. Once a court has issued its ruling, . . . that should end the matter, at least until appeal. Were it otherwise, then there would be no conclusion to motions practice, each motion becoming nothing more than the latest installment in a potentially endless serial that would exhaust the resources of the parties and the court—not to mention its patience. Hindsight being perfect, any lawyer can construct a new argument to support a position previously rejected by the court, especially once the court has spelled out its reasoning in an order. It is hard to imagine a less efficient means to expedite the resolution of cases than to allow the parties unlimited opportunities to seek the same relief simply by conjuring up a new reason to ask for it.

*Potter v. Potter*, 199 F.R.D. 550, 553 (D. Md. 2001). This reasoning applies with equal force in criminal cases; Harris was on notice no later than January 13, 2014 that the Government had contended that there was "no evidence . . . that the government affirmatively encouraged YRC to conduct this search," Jan. 13, 2014 Tr. 222:10–12, had a full and fair opportunity to present his best arguments in response—including the issuance of subpoenas to YRC. If anything, by allowing the hearing to stretch over six days spanning more than four months—requiring the continuance of trial of this case by more than eight months—Harris's opportunity to make his record on this issue has been more than adequate; it has been generous. There is no basis to allow him to augment the record simply because, having heard my ruling, he has come up with a new response and wishes for another bite at the apple.

Nor can Harris show that he did not have this information available at the time of the original hearing. In his briefs, Harris characterizes the Supply Chain PowerPoint as "not publicly available." Def.'s Mot. to Reopen 9. This is too clever by half: the Supply Chain

PowerPoint was in the files of Harris's own expert and readily was available to him throughout the original hearing.  *Id.* at 10.  Harris insists that "[t]he mere fact that it was available in Mr. Brandman's 'old files' does not make a document available to the defense as Mr. Brandman is an expert witness and is not part of the defense team."  Def.'s Reopen Reply 4.  This is disingenuous.  Brandman was retained by Harris and, in fact, eventually located the Supply Chain PowerPoint during a search performed at the request of Harris's counsel.  Brandman Aff. ¶¶ 5–6, Def.'s Mot. to Reopen Ex. B, ECF No. 122-3.  There is no indication that Harris could not have asked his expert to perform the same search *before* the record was closed on the Motion to Suppress, had he thought to do so.  And though Harris appears to be correct that this does not evidence "a lack of diligence," *see* Def.'s Reopen Reply 5, that is irrelevant—Harris simply did not believe it necessary to search for this particular document until after receiving an adverse ruling on his Motion to Suppress.  This strategic decision—whether or not it was fully considered—does not entitle Harris to another opportunity to present evidence already at his fingertips, the relevance of which was obvious given that the only legal principle at play during the hearing was the degree of influence, *vel non*, that the government may have played on the search that revealed the drugs that form the basis of the charges against Harris.

Further, even if Harris had presented a valid basis for reopening the hearing, he could not show that the Supply Chain PowerPoint is material.  It is well-settled that the Fourth Amendment "is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental officer.'"  *United States v. Jacobsen*, 466 U.S. 109, 113–14 (1984) (quoting *Walter v. United States*, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)).  "Whether a private party should be deemed an agent or instrument of the Government for Fourth

Amendment purposes necessarily turns on the degree of the Government's participation in the private party's activities, a question that can only be resolved 'in light of all the circumstances.'" *Skinner*, 489 U.S. at 614–15 (internal citations omitted). This inquiry focuses on two primary factors—"(1) whether the Government knew of and acquiesced in the private search; and (2) whether the private individual intended to assist law enforcement or had some other independent motivation"—which the Fourth Circuit has "compressed into '[o]ne highly pertinent consideration.'" *United States v. Jarrett*, 338 F.3d 339, 344–45 (4th Cir. 2003) (internal citations omitted) (alteration in original). "The burden of proving that a private party acted as an agent or instrument of the government is on the defendant." *United States v. Ellyson*, 326 F.3d 522, 527 (4th Cir. 2002) (citing *United States v. Shahid*, 117 F.3d 322, 325 (7th Cir. 1997)). Even were it timely presented, the Supply Chain PowerPoint does not alter my analysis with respect to either of the *Jarret* factors.[3]

First, the mere existence of the Supply Chain PowerPoint (the authority or use of which is not known) in the files of Harris's own expert does not show that the government "knew or acquiesced in" the search of the pallet. As the Government points out, the Supply Chain PowerPoint appears to address only *Air* Container Search Procedures, and it is not readily apparent that the same procedures would apply to ground carriers—particularly in light of the additional security concerns that likely are raised by air transport. *See* Gov't's Reopen Opp'n

---

[3] Harris also argues—after months of agreement that *Jarrett* and *Ellyson* set forth the proper test for government agency in this circuit—that those cases are not applicable here. Rather, he now advocates the approach taken in a partial dissent by Judge Davis in *United States v. Day*, in which he opined that private security guards exercising "'plenary police powers'" under state law should be considered public actors. 591 F.3d 679, 692 (4th Cir. 2010) (Davis, J., dissenting in part and concurring in the judgment in part). Even had Harris presented any evidence that Arrowood was a security guard exercising police powers—a proposition that has absolutely no support in the record—he has not explained how I may follow the views of a single judge writing in dissent, however persuasive it may be, in the face of clear, binding Fourth Circuit precedent to the contrary.

10.  Nor is it apparent that the Supply Chain PowerPoint instructs C-TPAT members to search suspicious cargo at all; it appears to contain instructions only on *how* to search such cargo, *see* Supply Chain PowerPoint, and simply may recognize the reality that some carriers may perform searches when authorized to do so by bills of lading or other contract language permitting them to do so.

Further, there also is no evidence that the Supply Chain PowerPoint ever was presented to or binding on YRC, much less that YRC or its employees were aware of it.  Harris focuses on the fact that the Supply Chain PowerPoint was "available on the C-TPAT web portal, which members are required to continually monitor," Brandman Aff. ¶ 6, and that "YRC adopted and internalized C-TPAT's instructions" generally through various corporate policies, Def.'s Mot. to Reopen 17.  But the Supply Chain PowerPoint bears no date and, according to Brandman, was presented at a conference held in the spring of 2007, Brandman Aff. ¶ 2, several months before YRC was validated as a C-TPAT participant, *see* Letter to Pat Scott, Senior International Consultant, YRC from Bradd M. Skinner, Director, C-TPAT/Industry Partnership Programs (Dec. 18, 2007), Def.'s Post-Hrg. Supp. Br. Ex. H, ECF No. 86-8.  Even if the Supply Chain PowerPoint was intended as authoritative instructions for C-TPAT participants to search cargo containers, there is no indication that it ever was provided to YRC or, for that matter, remained valid C-TPAT policy six years later when the search at issue here occurred.  And the mere fact that YRC generally was required to keep abreast of C-TPAT publications on its web portal carries little weight in light of the fact that Harris could not adduce any testimony indicating that any person affiliated with YRC or C-TPAT was aware of any requirement to search suspicious cargo.  *Cf.* May 15, 2014 Tr. 42:5–9 ("There is nothing in the explicit communications that the witnesses have talked about that C-TPAT gave to its members, like YRC, and there is nothing in

the language of the explicit understanding as to what YRC understood it was to do that suggests that they were to do anything other than report."). Indeed, Brandman himself, who swears to having attended the presentation of the Supply Chain PowerPoint, did not recall its existence until after he made a dedicated search for "literature wherein C-TPAT explicitly instructs, teaches or encourages its members to open cargo," Brandman Aff. ¶ 5, and at the hearing, testified to his belief that C-TPAT did not instruct participants to search cargo, *see* Apr. 25, 2014 Tr. 77:1–21, ECF No. 117  Simply put, Harris's ability to cherry-pick a single presentation that addresses some of the issues in my ruling does not alter my conclusion that neither Arrowood nor YRC was searching cargo at the government's instruction.

Even if C-TPAT did instruct YRC to search certain cargo, I already have found as a factual matter that, when Arrowood opened the pallet, *he* was not doing so for any law enforcement purpose, May 15, 2014 Tr. 41:17–19, and therefore Harris cannot satisfy the second *Jarrett* factor. Harris selectively quotes from my ruling to argue that, by observing that it is unlikely that "any of us will ever know for sure" what Arrowood's motivations were, I have held Harris to a reasonable doubt standard, rather than a preponderance of the evidence standard. Def.'s Reopen Mot. 19. This selective characterization of my ruling ignores my actual findings: that Arrowood's convoluted and internally inconsistent testimony undermined his credibility and forced me to determine what portions of his testimony, if any, could be believed, but not that the resulting lack of certainty precluded me from making findings at all. To the contrary, after weighing the evidence at the hearing, I found as a factual matter that Arrowood was not acting on behalf of the government when he performed the search at issue. May 15, 2014 Tr. 41:17–19. Though Harris is correct that there was much in Arrowood's testimony that cast doubt on his reliability as a witness or could be resolved in more than one way, *see* Def.'s Mot. to Reopen 21–

24 (listing purported lies told by Arrowood and reasons to question his motivations), the role of the court as fact finder is to resolve those inconsistencies and make findings on the record. *See, e.g.*, *United States v. Taylor*, 13 F.3d 786, 789 (4th Cir. 1994) ("When material facts that affect the resolution of a motion to suppress evidence seized during a warrantless search are in conflict, the appropriate way to resolve the conflict is by holding an evidentiary hearing after which the district court will be in a position to make findings."). The mere fact that Harris disagrees with my resolution of these factual disputes is not a reason to revisit my findings, and if he believes that they are contrary to the evidence, the appropriate remedy is an appeal to the Fourth Circuit, not a motion to reopen. *Cf. Above the Belt, Inc. v. Mel Bohannon Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983) (observing that a motion to reconsider should not be used "to ask the Court to rethink what the Court had already thought through—rightly or wrongly").

### III.     CONCLUSION

For the reasons stated above, Defendant's Motion to Reopen the Record and the Hearing for the Purpose of Considering Additional Material Evidence and to Reconsider the Court's Prior Decision on the Motion to Suppress Evidence, ECF No. 122, is DENIED.

It is so ordered.

Dated: November 6, 2014                                                     /s/
                                                                                    Paul W. Grimm
                                                                                    United States District Judge

dsy