```
 1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MARYLAND
 2                          SOUTHERN DIVISION

 3

 4   UNITED STATES OF AMERICA  :  Criminal Action No.

 5        v.                   :  PWG 13-202

 6   LEONALDO HARRIS,          :  Greenbelt, Maryland

 7             Defendant.      :  March 25, 2016

 8   _____/  9:20 A.M.

 9

10          TRANSCRIPT OF MOTIONS/SENTENCING PROCEEDINGS
               BEFORE THE HONORABLE PAUL W. GRIMM
11                UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13   FOR THE GOVERNMENT:      NICOLAS A. MITCHELL, Esquire
                              BRYAN EDWIN FOREMAN, Esquire
14                            Office of the U.S. Attorney
                              6500 Cherrywood Lane, Suite 200
15                            Greenbelt, Maryland  20770
                              301-344-4433
16

17   FOR THE DEFENDANT:       JUSTIN EISELE, Esquire
                              MIRRIAM Z. SEDDIQ, Esquire
18                            Seddiq Law Firm
                              14452 Old Mill Road, Suite 201
19                            Upper Marlboro, Maryland 20772
                              301-513-7832
20

21

22

23   OFFICIAL COURT REPORTER:  LINDA C. MARSHALL,(301) 344-3229

24         COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES

25
```

**P-R-O-C-E-E-D-I-N-G-S**

MR. MITCHELL:  Calling the case of United States of America versus Leonaldo Harris, Criminal Case Number PWG-13-202, Nick Mitchell and Bryan Foreman on behalf of the United States. Also sitting at counsel table is ICE Special Agent James Stull. We're here for a sentencing hearing.

THE COURT:  All right.  Thank you.

And Ms. Seddiq and Mr. Eisele, you are here on behalf of Mr. Harris; is that correct?

MR. EISELE:  That's correct.

THE COURT:  Be seated and be comfortable please.

We have a preliminary matter to deal with that I want to talk about before we begin the sentencing hearing.  In Document Number 222 filed on March 23rd of 2016, which was two days ago, Mr. Harris through counsel filed a Motion to Re-submit a Motion to Withdraw the Guilty Plea.

Now, let me give some background information with respect to the plea and the circumstances that deal with its entry and Motions to Withdraw.  I conducted a Rule 11 inquiry of Mr. Harris on July 22nd, 2015, the transcript of which I have reviewed.  And at that time, I accepted provisionally the Plea Agreement that had been reached between the defendant and the United States government under Federal Rule of Criminal Procedure 11(c)1(C).  At that time, Mr. Harris was represented Ms. Flynn and her firm, the second of the three lawyers who have

1    represented him as retained counsel in this case.

2            On September 3rd, 2015, in ECF 171, a Motion to

3    Withdraw the Guilty Plea was filed Ms. Seddiq on behalf of

4    Mr. Harris.  It was fully briefed.  The government filed an

5    opposition and on -- the Motion to Withdraw was filed and that

6    was done ECF 222 on March -- excuse me.  I've got the numbers

7    wrong, but the motion to -- the Motion to Withdraw or to

8    Withdraw the Guilty Plea was itself withdrawn, and I think that

9    was ECF 187.  That was on October 19, 2015.  In any event, 222,

10   is the Motion to Withdraw the Guilty Plea currently.

11           In order to be prepared to address this issue with

12   counsel today and, Mr. Eisele, I think that you -- I appreciate

13   that -- recognize that the sentencing will proceed today and you

14   said that in your filing, which I appreciate, but I want to give

15   you the opportunity to augment what you said in terms of your

16   motion.  I want to hear from Mr. Mitchell and then I intend to

17   rule on the Motion to Withdraw.

18           In addition to the grounds that were set out in 222,

19   ECF 222, I think that there is, sort of, one new fact that was

20   not previously identified in the original Motion to Withdraw.

21           Attached to ECF 222 is what purports to be an

22   affidavit and it is page 222-1 of ECF Number 222.  It purports

23   to be an affidavit by a person by the name of Richard Byrd, who

24   is housed at D.C. Jail in connection with a case pending before

25   this Court.

1          And in it on paragraph eight, he states and I quote --

2   he makes references to having been involved in a meeting with

3   various agents of the United States and with his counsel at

4   which time he looked at investigative files of the United

5   States.

6          And at page -- at paragraph eight, page 2 of the

7   affidavit it states, quote, one of the files I reviewed

8   contained specific information about Carlton McGregor and

9   Paul Harris, and that they had been debriefed and provided

10  information, specific information about Leonaldo Harris and

11  marijuana shipments out of California going to the east coast

12  and money laundering routes, close quote.

13         So that's the fact that was not part of the analysis

14  in the prior Motion to Withdraw.  It was never ruled on because

15  itself was withdrawn.

16         Briefly, if you don't mind, Mr. Eisele, if you want to

17  supplement what your written filing was in regard to the Motion

18  to Withdraw, I'm happy to give you the opportunity to do that.

19  Then, Mr. Mitchell, I'll hear from you and then I'll rule.

20         MR. EISELE:  May I proceed, Your Honor?

21         THE COURT:  Please.

22         MR. EISELE:  Just briefly and generally we would rest

23  on the pleadings.  However, I would go through two quick points.

24  We received this affidavit.  It is the only additional fact that

25  we have to our pleadings.  Due to the nature of the timing, we

1  have not had time to further investigate it.  However, because

2  it was in our possession, we felt we needed to bring it to the

3  Court.

4          THE COURT:  No, you did exactly right.  I have no

5  quarrel with the timing of what you did.  There's no quarrel

6  with that.

7          MR. EISELE:  And then we also -- with the reality the

8  sentencing has been pushed off, the whole sort of defense of the

9  case and as Your Honor probably remembers, there were lengthy

10  hearings on the suppression issues.

11          THE COURT:  Six days.

12          MR. EISELE:  Six days, multiple witnesses, a lot of

13  time invested by the Court.  Obviously, I was not the attorney

14  of record, but the general theory was that there was some

15  government involvement in that search.

16          THE COURT:  Right.

17          MR. EISELE:  And Your Honor found that the proof just

18  doesn't bear that out.  This affidavit, if believed, could

19  counteract that theory of the government that they were not

20  involved.

21          THE COURT:  Understood.  The significance of what it

22  was, I thought you were pretty clear in your motion as to what

23  it was.  It goes to whether or not the trucking company

24  inspector who opened the pallet in Pennsylvania and discovered

25  what turned out to be the marijuana that was then later sent

down here and seized at Mr. Harris' residence was -- the point

that was raised first by Mr. Ravenell and you're raising now,

the argument is that it was a search where the government

directed or knew of the underlying criminal activity and asked a

non-government entity to, essentially, act as an agent of the

United States to conduct the search, thereby making it a search

subject to Fourth Amendment reasonableness as opposed to a

private individual doing what might otherwise be illegal under

the Fourth Amendment, and then calling the United States or the

local police and say, hey, look what I found.  I understand that

to be the point.

       MR. EISELE:  Yes, that's it, Your Honor.  And just in

the context of rule for withdrawing guilty plea, Your Honor is

well-versed in that rule.  I would just say, Your Honor, it

seems as if, that the case law has drifted from the plain

language of the rule.

       Again, just to review the rule, a defendant may

withdraw the plea of guilty or nolo contendere before the Court

accepts the plea for any reason or after the Court accepts the

plea before it imposes a sentence if -- and then it talks about

fair and just reason.

       The case law has drifted toward an actual innocence

claim and our argument would be under this newly found evidence

and under the actual reading of the rule that --

       THE COURT:  Your argument is, is even if it's not

1    actual innocence, it would be inability to convict if the

2    evidence was suppressed?

3            MR. EISELE:  That is correct, Your Honor.

4            THE COURT:  I understand your argument.

5            MR. EISELE:  That would be it.  Thank you, Your Honor.

6            THE COURT: Yes, sir.

7            Mr. Mitchell.

8            MR. MITCHELL:  Your Honor, the government fully

9    briefed the withdrawal --

10           THE COURT:  I reviewed all that last night, so you

11   need not assume that I'm coming to this without a memory of what

12   was briefed.

13           MR. MITCHELL:  So, I will focus then on the affidavit,

14   Your Honor.

15           THE COURT:  I think that would be what you would

16   wisely spend your time doing.

17           MR. MITCHELL:  Thank you, Your Honor.

18           So, the affidavit, I would note, is dated

19   February 5th, 2016, and it discusses a report of reverse proffer

20   that took place in Northern Neck on October 7th, 2015, long

21   after the April, 2013, search that was hotly litigated in this

22   court before Your Honor, several years after that.

23           The applicable paragraph, which Your Honor referred to

24   is paragraph eight of that affidavit.  And I'll read it into the

25   record, Your Honor.  It's very brief.  It says, "One of the

1  files I reviewed contains --

2          THE COURT:  I think I just read it, so I don't think

3  you need to repeat it.  If you want to parse it to give me the

4  significance, that's fine, but I don't think you need to re-read

5  it.

6          MR. MITCHELL:  The point is, Your Honor, there's no

7  date in this paragraph as to when Paul Harris or Carlton

8  McGregor may or may not have been interviewed by law

9  enforcement.  It's impossible to tell on the face of this

10 document whether it occurred after the April, 2013 search or

11 before the April, 2013 search.  That's the government's first

12 point.

13         Second point is there is no information in here

14 that -- assuming it's true that it predated the April, 2013

15 search, that that information made its way to YRC and

16 specifically to Tom Arrowwood who took it upon himself to open

17 up this pallet.

18         THE COURT:  And so the record at this stage is clear,

19 YRC is a trucking company in Pennsylvania where the pallet was

20 offloaded after it had come from the shipment location in

21 California and was awaiting the local run down to Greenbelt,

22 Maryland when Mr. Arrowwood, who was the floor inspector at the

23 warehouse opened up the pallets, right?

24         MR. MITCHELL:  Correct, Your Honor.

25         The final point I'll make, Your Honor, is that this

affidavit is authored by an individual named Richard Byrd, who

as Your Honor noted has been indicted in this district, Criminal

Case Number RDB-14-186.  It's the Second Superseding Indictment

there for conspiracy to distribute, possess with intent to

distribute cocaine and marijuana, and to launder money.

It's an extensive speaking Indictment and it's the

government's understanding that he is going to trial in July of

this year.  So, Your Honor, I -- on the face of it, this

affidavit, even if construed in the light most favorable to the

defendant does not stand for the proposition, does not go so far

as to suggest that Mr. Arrowwood's search was in any way

contrary to the law or contrary to the findings of this Court

after six days of evidentiary hearings.

And it's also, of course, the defendant's burden to

show that a withdrawal of the guilty plea is appropriate at this

stage and the government submits that the defendant has not met

its burden here.

Thank you, Your Honor.

THE COURT:  Mr. Eisele, last word with you, sir.

MR. EISELE:  I think it's fully briefed, Your Honor.

Thank you.

THE COURT:  All right.  Thank you.

Well, I appreciate that and I think the record should

be clear that Mr. Eisele and Ms. Seddiq had an obligation to

bring this to my attention, which they did and I'm grateful for

1   them having done so.

2          So, let's set the stage.  The Motion to Withdraw as

3   originally filed was very thoroughly and well briefed.  So,

4   let's kind of go back in the chronology and take a look at the

5   law that I have to apply in determining whether to allow the

6   plea to be withdrawn.

7          Mr. Eisele is exactly correct, the starting point is

8   the Rule of Criminal Procedure 11(d).  That used to be Rule

9   32(d) and 32(e).  Now, that has been superceded and it's now in

10  Rule 11(d).  It does place, as Mr. Mitchell says, the burden on

11  the moving party to show a, quote, fair and just reason why

12  withdrawal of the guilty plea should be allowed.

13         And that articulation of the rule itself was first

14  discussed or if not first discussed, at least discussed in

15  *United States versus U-B-A-K-A-M-M-A,* found at 215 F.3d 421,

16  Fourth Circuit 2002.

17         Mr. Eisele is right, the notion of sort of any fair,

18  just reason has sort of developed over time.  And now the Fourth

19  Circuit recognizes the six factor test that's set out in *United*

20  *States versus Moore*, 931 F.2d 245.  And that is, number one,

21  whether the defendant provided credible evidence his plea was

22  not knowing or voluntary.  Number two, whether the defendant

23  credibly asserted his legal innocence.  Number three, whether

24  there was a delay between entering the plea and moving for

25  withdrawal.  Number four, whether the defendant had close

assistance of competent counsel.  Number five, whether

withdrawal will prejudice the government.  And Number Six,

whether the withdrawal will inconvenience the Court and waste

judicial resources.

And I think Mr. Eisele's characterization is probably

fairly accurate.  It's moved, sort of, towards a actual

innocence standard as opposed to any fair and just reason.

However much it may have moved, that's the law I've got to

apply.

So let's take these one at a time.  Number one,

whether the defendant provided credible evidence his plea was

not knowing or voluntary.  As was skillfully acknowledged by

counsel for the United States and counsel for Mr. Harris in

their earlier briefing, the law pretty much throughout the

United States is consistent.  And that is, the way to determine

whether or not there is credible evidence the plea was not

knowing and voluntary is to determine whether the judge that

accepted the plea conducted an appropriate inquiry under Rule 11

of the Federal Rules of Criminal Procedure.

And I had, as part of the earlier briefing, a

transcript prepared for the Rule 11 proceeding that took place.

Admittedly, Mr. Eisele and Ms. Seddiq were not there because

they were not retained at that point.  It was Ms. Flynn who was

there.

And I carefully reviewed that yesterday evening and I

1    am satisfied that I covered not only what is required in the

2    bare-bones outline of factors in Rule 11, but that I fully

3    explored whether or not it was knowing and voluntary and to the

4    point of asking -- ascertaining Mr. Harris' educational status,

5    he's got a two year degree, Associates Degree; to verifying that

6    he was under the influence of no substance that would interfere

7    with his ability to make an important decision and that he was

8    competent to make a decision; to verify that he was suffering

9    from no medical or other condition that might interfere with his

10   decision-making.

11          I inquired to determine whether or not anyone had

12   forced him against his will to enter a plea.  The plea was

13   actually taken a week after it was originally scheduled to be

14   taken, because Mr. Harris was concerned that Ms. Flynn, who was

15   the senior lawyer in the firm that was defending him, was

16   outside the United States.  She was traveling and he came for

17   the guilty plea and an associate of her firm was there, and he

18   was uncomfortable entering the plea until Ms. Flynn was there.

19   So, we continued it so Ms. Flynn could return and she did.  And

20   I inquired of Mr. Harris of that at the time I took the Rule 11

21   plea.

22          I did my very best to go through the plea letter that

23   was entered into as an exhibit for the colloquy.  That was the

24   plea offer that the United States had written.  We went through

25   all of that.  We discussed the statute that he was pleading

1    guilty to, the offense, the essential elements.

2            I determined whether there was a factual basis.

3    Mr. Mitchell provided that factual basis that had previously

4    been provided in writing and signed by Mr. Harris, who

5    acknowledged he read it before the plea hearing and that he

6    understood it.  And he specifically said that he agreed.  He was

7    answering questions under penalty of perjury; that the facts

8    that the United States said in the Statement of Facts could be

9    proven beyond a reasonable doubt if the case went to trial.

10           So, the significance of that -- I also talked about

11   the guidelines calculation, the 18 U.S. Code 3553 factors and

12   how sentencing determined.  I went through the waiver of all the

13   rights that he would give up by pleading guilty, the

14   consequences, collateral consequences of pleading guilty, the

15   consequences of a limited scope of appeal by pleading guilty.

16   And so, I am satisfied that I fulfilled both in the letter and

17   the spirit of what is required by Rule 11.

18           Secondly, has the defendant credibly asserted his

19   legal innocence?  Well, it's interesting because, I guess, legal

20   innocence is not factual innocence.  And so he has argued that

21   he is legally innocent because the decision that I made to

22   overrule the Motion to Suppress the Drugs, which are the

23   gravamen of the case that he pleaded guilty to, that if my

24   decision was wrong, then he could not legally be found guilty.

25   Whether that's true or not, I don't know, but at least it's not

a frivolous argument and that's why Mr. Eisele is obligated to bring to my attention the affidavit of Mr. Byrd.

So, the question is, does this credibly call into question the rulings I made regarding the search and seizure. And some comment has been made about this already, but for the record, let me just make sure I clarify my view of what happened.

Mr. Harris has been represented by three lawyers in this case, all retained, all of whom are enormously skilled criminal defense attorneys. In fact, I think all three -- the gist of what they do, if not entirety of it, is criminal defense.

Mr. Ravenell who began and who conducted the -- represented Mr. Harris during the six days of hearings. Ms. Harris -- excuse me, Ms. Flynn, who is also highly experienced. And of course, Ms. Seddiq and Mr. Eisele as well.

And Mr. Ravenell is one of the most skillful trial lawyers in the district of Maryland. He has many years of experience. I think it's safe to say that there are not that many six-day suppression hearings that take place over the period of a number of months.

He filed a vigorous Motion to Suppress. He attached exhibits. We had hearings. He asked to continue the hearings to bring in additional evidence. He hired experts and we went through in painstaking detail the circumstances that led to the

trucking company employee opening the pallet, finding what he
suspected was controlled substance, calling the Pennsylvania
State Police, who then contacted Maryland authorities and it led
to the search and seizure that led to the charges in this case.

I ruled that there had not been a sufficient showing
that the search was known about by the United States or that
they participated in it such that the search was not an act of
the United States, but rather an independent third party and
that was the basis of my ruling. As a result of that ruling
then, the key evidence, the essential evidence, the evidence
without which Mr. Harris could be found guilty was ruled to be
admissible.

So now I have to take a look at whether or not
Mr. Byrd's affidavit backs me away from that or raises an issue
as it presently appears before me that would cause me to
question the correctness of my earlier ruling.

The key paragraph is paragraph eight. It does say one
of the files he reviewed was -- contained specific information
about Carlton McGregor. While I'm not sure if Carlton McGregor
is the same Jermaine McGregor who was referred to in the
Statement of Facts or whether it's some other individual. Maybe
Carlton is the same as Jermaine, but --

So, the first thing is whether he's even got a person
who was connected with these events. And Paul Harris had been
debriefed and provided information, specific information about

Leonaldo Harris and marijuana shipments.  Although Mr. Byrd

purports to have read this taken notes and his attorney took

notes, this statement in paragraph eight is conclusory.  It

doesn't say what that information was and as pointed out by

Mr. Mitchell, it doesn't say when that was.

And the key is, is that this affidavit was executed on

May -- excuse me, February 5th of this year, 2016, and the

proffer session that it refers to took place in October 7th of

2015.  Those events were, of course, many, many years after the

2013 events that led to the charge in this case.  This is the

case captioned 13.

So, on the record before me, there is not a sufficient

showing to convince me that Mr. Harris has credibly asserted his

legal innocence.  And so that factor, I think, militates against

granting the motion.

Third is whether there was delay between entering the

plea and moving for withdrawal.  Well, as I mentioned, the plea

itself was taken on July 22nd, 2015.  And the first Motion to

Withdraw was on September 3rd, 2015.  So that is a several month

delay.  So, it wasn't one of those situations where a person

pleads guilty and then immediately says, I made a mistake.  I

got to undo this.

And next, whether the defendant had close assistance

of competent counsel.  The answer to that in my judgment is,

yes.  Mr. Ravenell, although he had to withdraw for

circumstances that did not allow him to continue beyond the
hearing, is a very experienced and very capable criminal defense
attorney, as is Ms. Flynn, as are Ms. Seddiq and Mr. Eisele.

And at the time of the plea, when the plea was taken,
Ms. Flynn had taken over from Mr. Ravenell.  We had rescheduled
proceedings so that Ms. Flynn had enough time to investigate and
become fully cognizant of the facts of the case.  And I am
convinced that Mr. Harris did have close assistance of competent
counsel.

Will the withdrawal prejudice the government?  Well,
this case now is rather old.  It dates back to 2013.  There are
a lot of witnesses that would have to be called who are -- who
would have to come into court if we were to bring this case to
trial.  Some of those witnesses would have to be brought in from
out of state.  They are lay witnesses.  We all know that as time
goes by that memories and details become blurred and so there
clearly is an inconvenience to or prejudice that the government
is faced with if proceedings get to be this long and result in a
delay of the trial.

I note that this case is a 2013 case and Mr. Harris
has been in pre-trial custody since April 18th of 2013.  So
there would be prejudice to the United States if we were going
forward.  I actually don't think I need to reach the prejudice
issue based upon the other factors, but if I do, I think it goes
in government's favor.

1          Finally, whether the withdrawal will inconvenience the

2     Court and waste judicial resources.  Maybe that would be the

3     case if you begin to try a case and the government starts to

4     produce evidence, you spent some time, you've got a jury in the

5     box.  And then after days or weeks of testimony, the defendant

6     suddenly says, I'm going to plead.  Then the jury is dismissed

7     and then the defendant wants to withdraw the plea, and then at

8     that point, you could have a circumstance where it would waste

9     the time of the Court.

10          But I do not ever believe it's a waste of the Court's

11    time to try a case if the defendant has properly demanded trial

12    and has not otherwise decided to plead guilty in a way that

13    would not warrant the withdrawal of that.  So, the last

14    factor -- in my mind, the jury trial is never an inconvenience

15    for the Court.  It's a privilege for the Court to have the

16    opportunity to participate in it and nor is it a waste of

17    judicial resources, unless you have that circumstance which is

18    absent here I've just described in which we already had a trial

19    or a good portion of a trial, then there's a plea and then

20    there's a withdrawal.

21          So, based upon the factors in *United States versus*

22    *Moore*, the facts before me which have been fully briefed, it is

23    my view that the Motion to Withdraw the Guilty Plea must be

24    denied and I do so at this time.

25          Now, I think we can move into the sentencing.  And in

1  that regard, there are some objections to the -- the Presentence

2  Report that Mr. Eisele raised in his papers that I am required

3  to resolve before I can calculate the guidelines.

4      Let me just say initially this:  The Presentence

5  Report prepared by Mr. Mebane and the probation department

6  recommends, as did not escape the attention of counsel, that I

7  did not accept the plea under Rule 11(c)1(C).  The plea that I

8  conducted the colloquy of Mr. Harris was pursuant to 11(c)1(C)

9  and I conditionally agreed to be bound by that plea subject to

10  my ability to decide whether I would agree with that at the time

11  of sentencing after I had reviewed the Presentence Report.

12      And it is safe to say that the probation department

13  believed that -- recommended that I withdraw the "C" plea for

14  the reason that there were a number of sentencing factors that

15  would have increased the offense level of Mr. Harris' offense

16  that were not part of the calculation of guidelines that was

17  stipulated to as part of the "C" plea.  And for that reason that

18  the "C" plea period of time was insufficiently --

19  insufficiently -- an insufficient period of custody given the

20  application of all of the guidelines factors that the probation

21  department would apply if it were not a "C" plea and they were

22  asked to address those.

23      I take no quarrel with what Mr. Mebane has done.

24  That's the job of the probation department to look at the

25  Presentence Report through the lens of what is required by the

1    guidelines.  That's their job and no one does it better.

2         But it's clear at 11 -- if you go to Federal Rule of

3    Criminal Procedure 11(c), what 11(c) specifically says is that

4    it authorizes the United States and the defendant to proceed

5    under, and I am quoting now, a plea agreement that may specify

6    that an attorney for the government will -- now I go to

7    Subsection C -- agree that a specific sentence or sentencing

8    range is the appropriate disposition in the case or that a

9    particular provision of the sentencing guidelines or policy

10   statement or sentencing factor does or does not apply, all

11   right.

12        And so, the rule contemplates that in the hard

13   bargaining that competent counsel do to negotiate whether or not

14   a case will be pleaded, that they absolutely have the right with

15   no impropriety whatsoever to negotiate about the guidelines.

16   And often times, that's the greatest success that a defense

17   attorney can accomplish is to drive a hard bargain with the

18   government that allows the government to back away from

19   asserting certain aspects of the guidelines or policy statements

20   that would elevate the offense level from a lower offense level

21   to a higher offense level.  And the higher the offense level,

22   the higher the recommended guideline sentence.

23        So, when I approach a "C" plea, the beginning thing I

24   do is to talk about, well, how much knowledge do I have of the

25   case?  In this particular instance, I have six days of

testimony.  I suspect that we had more days of testimony in
pretrial hearings than this case would have taken if we went to
trial on the merits.  So, I have some substantial factual basis
of the underlying facts that constitute the evidence in this
case.

Secondly, I have to ask myself, are the lawyers
involved here competent lawyers whose opinions and
recommendations I should respect?  All of the lawyers who have
represented Mr. Harris in this case, beginning with
Mr. Ravenell, including Ms. Flynn and now including Ms. Seddiq
and Mr. Eisele are experienced, aggressive within the bounds of
what's appropriately aggressive lawyers who fight hard for their
clients up to the last minute even, as is evident in this case.
And when you have lawyers who have that experience and have that
skill, they have credibility when they make a recommendation.

Similarly, with the government, Mr. Mitchell is highly
skilled, has complete knowledge of this case.  And when counsel
come in and argue, the underlying basis that really Mr. Harris
had a substantial problem with in this case was that he wanted a
guilty plea where he could appeal my decision on the search
warrant.  And I don't -- I don't fault him for that one bit.

The government wasn't going to buy it.  The government
was saying, nope, we're not going to do that.  And so, how does
a person at that point decide what to do?  If the evidence comes
in, then the outcome is pretty hard to -- it's hard to foresee

an outcome inconsistent with guilt. And if there's no plea,
then the defendant doesn't get the benefit of cooperation or not
cooperation, acceptance of responsibility. And if there's no
acceptance of responsibility, then the offense level is two or
three levels higher than it otherwise would be, and that is a
significant increase in what the possible sentence is.

And so, the ability of the defense attorney to
negotiate a hard bargain with the United States, hard and fair
where the United States foregoes the opportunity to argue
certain enhancements, like, the gun enhancement or other
enhancements in terms of calculation.

No, not the gun enhancement. That was a poor choice,
but other enhancements that were referred to by Mr. Mebane in
his PSR is the essence of what goes into effective plea
bargaining by competent counsel.

And so, the question in my mind is, when I decide
whether to conditionally accept the "C" plea or not is, do I
respect the lawyers who are making the recommendation? Do I
have a sufficient knowledge of the facts to be able to
independently decide what I think is a fair and appropriate
sentence based on all the information I know?

And under those criteria, which I apply in this case,
I agreed provisionally to be bound by it. And I now agree
un-provisionally to be bound by it after having reviewed the
Presentence Report, the submissions by counsel. So that

preliminary matter is addressed.  I will bind myself

unconditionally to accept this plea for the reasons I just

stated.

Now, let me go through the calculations that were in

the Presentence Report, the guidelines calculations.  The first

and undisputed is whether or not the base offense level here is

a 30.  And under Section 2D1.1B5, clearly it was because the

amount of controlled substances is more than a thousand

kilograms, but less than 3,000 kilograms of marijuana.

Then the -- in paragraph 24, the Presentence Report,

the probation department believed that there should be a

two-level enhancement because a Glock Model 19 9-millimeter

caliber firearm was found in the closet in the defendant's

bedroom.  And under the guidelines, Section 2D1.1B1 would

require the probation department to add two points for that.

Mr. Mebane faithfully pointed out in the final

sentence and underlined it, and italicized it so no one would

miss it, this upward adjustment was not contemplated in the

stipulated plea agreement.  And because I have cited a provision

of Rule 11(c)1(C) that allows the government to negotiate away

arguing for a offense level enhancement that would otherwise be

appropriate and because I have agreed to be bound by the

agreement that they reached, I will not include that two-level

enhancement in the calculation of the offense level.

The next is specific characteristics and the probation

1    department applied a two-level increase under Section 2D1.1B12

2    because the defendant maintained a premise for the purpose of

3    manufacturing or distributing a controlled substance for which

4    two levels were added.

5              And let me check, but Mr. Eisele, I do not understand

6    you to be contesting that two-level increase, is that right?

7              MR. EISELE:  No, Your Honor.  On page 4 of the Plea

8    Agreement, it's contemplated by the --

9              THE COURT:  Right.  And the factual statement, I

10   think, in the Statement of Facts also has that as well, so that

11   one is going to apply.

12             The final one is adjustment for role in the offense.

13   In this particular instance, the probation department citing to

14   Guidelines Section 3B1.1A believed that there should be a

15   four-level enhancement of Mr. Harris, because he was an

16   organizer or leader of the criminal activity that involved five

17   or more participants, or was otherwise extensive.

18             Again, Mr. Mebane faithfully said in italicized and

19   underlined text that this upper adjustment was not contemplated

20   in the stipulated plea agreement.  I agree that it wasn't.  I

21   agree that the facts probably would have warranted it, but

22   that's exactly the hard negotiation that was undertaken by

23   counsel for Mr. Harris that resulted in the United States

24   agreeing not to make that position.  It's exactly within the

25   scope of what 11(c)1(C) requires.  And that's one additional

reason, for example, why I say that Mr. Harris had the benefit of close support from competent counsel when he made the decision to enter a plea.

He got bargains from the government that reduced him from an offense level 38, which the record should reflect an offense level 38 would have a -- for a offense level -- criminal history category two would have been a 262 to 327 month period of imprisonment. Significantly higher than the agreed to 120 months.

So, that is -- if that's not evidence of close assistance of competent counsel, I'm not quite sure what is and that further supports my decision not to allow the plea to be withdrawn.

That leaves a adjusted offense level of 32 from which we subtract two points, because Mr. Harris did accept responsibility under Section 3E1.1A and that results in a offense level adjusted of 30.

And I do not believe, Mr. Eisele, there's any objection to that adjusted level. There is an objection on criminal history I know.

MR. EISELE: That is exactly correct, Your Honor.

THE COURT: Thank you, sir.

Now, we have go to criminal history. This begins at paragraph 36 through 39 of the Presentence Report at page 8. Mr. Harris has very little criminal history and -- but one

point, in fact, the only point that he has for criminal history

point is at age 27 in a charge that was dated March 10, 2009, he

was charged with driving under the influence in Beverly Hills,

California, and on April 14th, 2010, he received a sentence of

36 months probation. And that one point was increased upwards

by two more points in paragraph 38 of the Presentence Report

because the current offense, which conduct took place in -- when

you go back to the Indictment, it was conduct that took place

between September 12 -- excuse me, September, 2012 and April,

2013.

If you look at 36 months probation imposed in April of

2010, 36 months, three years, it takes you to April, 2013.

Clearly, there was a probationary sentence that was still in

place and the application notes in the guidelines make it clear

that it doesn't have to be supervised probation.

So, I find no error in the calculation of the -- no

error in the calculation of the criminal history, which is one

point plus two points. Total criminal history category of three

points or criminal history category Roman Numeral Number II.

And that category would be offense level 30. Criminal history

category two would produce a guidelines custody range of 108 to

135. That is by law must be increased to 120 to 135, because

there's a ten year mandatory minimum sentence for the case --

for the charge to which he pleaded guilty.

The guidelines calculation also needs to reflect that

1  there would be a guidelines recommendation of five years

2  supervised release, a fine of between $20,000 to $10 million,

3  and a $100 special assessment.  That's my calculation of the

4  guidelines range.

5          Mr. Eisele, did I leave out any of the objections you

6  had, sir?

7          MR. EISELE:  No, we had three objections and you

8  covered all of them.

9          THE COURT:  Okay.  Thank you.  So that's my

10  calculation of the guidelines range.

11          I now want to confirm -- I probably should have done

12  this a little bit earlier, Mr. Eisele, that you and/or

13  Ms. Seddiq have reviewed the Presentence Report with your

14  client.

15          MR. EISELE:  That's correct.

16          THE COURT:  And, Mr. Harris, you had a chance to talk

17  about the Presentence Report with your lawyers, sir?

18          THE DEFENDANT:  Yes, I did, Your Honor.

19          THE COURT:  All right.  Thank you, sir.

20          Counsel, I think now is the appropriate time to

21  approach for the sealed portion of this sentencing.  And

22  Ms. Seddiq or Mr. Eisele, can I get you to make sure the headset

23  is operational?

24      (Bench conference.)

25          It is the policy of this court that every guilty plea

1   and sentencing proceeding include a bench conference concerning

2   whether the defendant is or is not cooperating.

3       (Open court.)

4       THE COURT:  Mr. Mitchell, I do not understand there to

5   be any victims --

6       MR. MITCHELL:  There are none.

7       THE COURT:  -- that wish to be heard.  And so, if

8   that's the case, if you would make your sentencing presentation.

9       Then, Mr. Eisele, I'll hear from you, sir.  And then,

10  of course, Mr. Harris if he wishes to be heard.

11      MR. MITCHELL:  Thank you, Your Honor.  I'll be

12  somewhat brief, but I do believe that the 3553(a) factors

13  support a sentence of 120 months in this case, which is the

14  agreed upon sentence by counsel after much negotiation, as Your

15  Honor has noted.

16      This is a very serious offense, Your Honor.  The

17  defendant engaged in drug trafficking, marijuana specifically,

18  over a number of years.  By our count, Your Honor, it was at

19  least nine shipments of significant weights.  Somewhere in the

20  range of 500 to 1300 pounds, including all the packaging and the

21  pallets.

22      The government and the defendant, of course, have

23  agreed that the amount of marijuana attributable to this

24  defendant during the course of this conspiracy was 1,000 kilos

25  to 3,000 kilos, which is a significant amount of marijuana and

1    it's a significant amount of money.

2    Although, perhaps, the sentiment, the national

3    sentiment of marijuana might be changing, this does not in any

4    way underscore the seriousness of this offense.  Under no

5    foreseeable circumstances would the bulk trafficking of

6    marijuana, as it was done in this case, be condoned by the

7    federal government.  In other words, surreptitiously done

8    without any sort of reporting of the money that flowed as a

9    result of this drug trafficking, without any sort of tax

10   implications, et cetera, et cetera.

11   Add to that, Your Honor, individuals moving

12   significant sums of cash from Maryland to California through

13   commercial airlines and we believe, as the defendant pled,

14   Mr. McGregor under Mr. Harris' direction transported between

15   200,000 and $250,000 in U.S. currency on each flight when he

16   traveled across the country.

17   We have, of course, a house in California that was

18   controlled by Mr. Harris that was used to further the drug

19   trafficking and the packaging and the transportation across the

20   United States.  We have a warehouse in Maryland that was used to

21   unpack the marijuana and further distribute it.  And then, of

22   course, we have marijuana at Mr. Harris' residence that he

23   shared with his co-defendant, Ms. Sims.

24   I have a couple photographs, Your Honor, that I won't

25   dwell upon.  Some of these Your Honor has seen during the course

of the extensive pre-trial motions hearing, some Your Honor has

not.

THE COURT:  You're going to put them on the overhead,

sir?

MR. MITCHELL:  Yes, Your Honor.

THE COURT:  Has Mr. Eisele seen those?

MR. MITCHELL:  He has copies, Your Honor.

THE COURT:  Thank you, sir.

MR. MITCHELL:  The first Your Honor has seen before,

this is Government Exhibit 1.  It's the two pallets that were

seized April of 2013.  While the other pallets, the previous

eight other shipments were not intercepted by law enforcement,

based on the weight of those pallets, it's -- I have reason to

believe they were substantially similar to these.

Government's Exhibit Number 2 are the bales of

marijuana that were seized in April, 2013, a large number.  I

believe it was just under a hundred, if my memory is correct.  I

believe it was 97, 98, something like that.

A search warrant was executed at the defendant's

residence and at his residence there was numerous slips of paper

with what the government would submit are dollar amounts on it.

As Your Honor may recall, the defendant had just returned from

California with Mr. McGregor at the time that the shipment was

seized and this bag was found in his residence with this slip

that says, 250,000.  Again, the government submits that's

$250,000.  There were numerous slips of paper found in the residence of this sort.

Your Honor has seen this one as well.  This is Government's Exhibit Number 4 for the sentencing hearing.  It's three IDs bearing photographs each of which are of the defendant.  One of which says Mark Mitchell.  Of course, the defendant is not Mark Mitchell and Mark Mitchell is one of the names we saw related to some of the shipment materials for prior shipments.

We had three notebooks that were seized.  This happens to be one of them, Government's Exhibit Number 5.  And this particular notebook has what appears to be a drug ledger naming various different individuals who received marijuana from the defendant, continuation thereof.

We have two other ledgers, Government's Exhibit Number 6 and I'll just point Your Honor to one particular page, which is near the end.  200,000 minus 21,000, plus 179,000.  New bag total, 179,000.  That's Leo, 15,000; Cali, 6,000.  Top this bag, 200,000.  The government submits this is an accounting of cash that traveled across the country, which the defendant admitted to.

Finally, Government's Exhibit Number 7, another ledger.  And again, I'll point Your Honor to one particular page where we have what the government would submit are dollar amounts.  And you can see the bottom line is $450,000.  And I

1  show these to the Court simply to show how much money was

2  involved in this operation.

3          We're not talking about $20 here, $20 there.  We're

4  talking about hundreds of thousands of dollars.

5          THE COURT:  Well, you seized $2 million?

6          MR. MITCHELL:  No, Your Honor, $2 million was not

7  seized.  There were several bank accounts that were seized

8  worth, I think, several hundred thousand dollars, but the money

9  judgment is for $2 million, which is the government's

10 extrapolation which has been agreed to by the defendant of how

11 much money flowed through this conspiracy attributable to this

12 defendant during the time period that's relevant.

13         And then finally, of course, Your Honor, Government

14 Exhibit Number 8, which is the firearm that was found in the

15 defendant's bedroom at his residence.

16         Now, the are mitigating factors as well, Your Honor,

17 which I briefly want to touch upon, which is why the government

18 believes that a sentence of 120 months is appropriate in this

19 case.  One of the mitigating factors, of course, is the

20 defendant's criminal history or lack thereof, I think.

21         Certainly, Mr. Eisele would be justified in arguing

22 that his criminal history might over-represent what it actually

23 is.  Either way, 120 months falls within the agreed upon

24 guidelines range that would be appropriate.

25         I would note, Your Honor, and I think Your Honor is

aware of this, the government did file -- trial was set on two

different occasions in this case and I believe it was the second

occasion, the government filed a motion in limine pursuant to

Rule 404(b) to admit evidence of an arrest and a seizure related

to this defendant in New Jersey prior to the conduct that was at

issue in this case, which also involved the seizure of

marijuana, a bale of marijuana.

So, this defendant was not convicted of that

particular offense. The government argued that it was relevant

to the conduct here. So, I think the defendant's criminal

history might be under-represented. It might be exactly

spot-on.

Another mitigating factor with regard to the firearm

is that there's no evidence and the government is not aware of

any evidence that the defendant actually carried the firearm to

any of the deals, that he traveled with the firearm to

California. It was found in his bedroom. He was not a

prohibited person, which is why we don't have a 922(g) charge as

well.

That said, there were bales of marijuana, a money

counter, other indicia of marijuana trafficking in his

residence, which made it very problematic for him to have that

firearm there. And, of course, he admitted to possession of

that firearm in the Statement of Facts.

Another important point, Your Honor, and this is my

final point, is general deterrence.  The government certainly

hopes that this defendant after serving a period of

incarceration of ten years and likely, as pointed out in his

pleadings, being deported back to his home country would not

engage in activities such as these in the future.  And

certainly, would not return to the United States to engage in

such activities.

So, specific deterrence, I believe, is a factor in

this case, but hopefully a sentence of ten years will be

sufficient, but not greater than necessary for specific

deterrence as to this defendant.

With respect to general deterrence, the government

believes that a clear message needs to be sent that even though

this is marijuana, it's not heroin, it is a significant problem

in the United States.  It is a significant a problem in the

places where marijuana is produced.  It causes a number of

people to be killed abroad and here within the United States as

well.  So, this is a serious drug.  It's a serious problem.

So, for all these reasons, Your Honor, the government

believes that a sentence of 120 months is sufficient, but not

greater than necessary under 3553(a).

The government would also request that the Court grant

the Motion for Forfeiture that was entered in this case.

THE COURT:  I may have already signed that.  Let me

just see.

1           (Pause.)

2                THE COURT:  I don't actually see it in my file, likely

3      because I just didn't bring it in.  Do you have an extra copy,

4      Mr. Mitchell?

5                MR. MITCHELL:  I do, Your Honor.

6                THE COURT:  All right.  It's been agreed to, so if you

7      bring it up, I'll sign it now.

8                MR. MITCHELL:  Thank you, Your Honor.

9                THE COURT:  You can just give it to me.  I'm not

10     trying to take away the pleasure of having our courtroom deputy

11     give it to me, but I just think it's more direct if you bring it

12     to me myself.

13               MR. MITCHELL:  And the government's final request,

14     Your Honor, would be a period of supervised release of five

15     years.

16               Thank you, Your Honor.

17               THE COURT:  All right.  Mr. Eisele, I know that you

18     want to be heard on this and so I want to give you second to do

19     it.  Give me one second so I can listen to you fully when you do

20     speak.

21               MR. EISELE:  Yes, Your Honor.

22               THE COURT:  I have signed the Forfeiture Order.

23               Go ahead, sir.  I'm happy to hear you.

24               MR. EISELE:  Thank you.

25               Yes, Your Honor.  Before I get started, I just want to

1  recognize that my client has family in the courtroom that

2  traveled great distances to be here.  His brother Lincoln,

3  Leslie and Corey also here in support of our client.

4           THE COURT:  And I know that this family members have

5  been very supportive of him throughout.  They attended many of

6  the sessions that we had at the suppression hearing, so I know

7  that his family is important to him and he is important to them.

8           MR. EISELE:  Yes, and thank you for recognizing that,

9  Your Honor.

10          And as it comes to sentencing, there's quite a bit of

11 statistics.  I don't think we cited it in our paperwork this

12 time, but it is clear that persons that have great family

13 support are much less likely to have anything happen in the

14 future.  And to that extent, we think that mitigates the

15 situation.

16          He's very -- his family is very important to him and

17 vice versa.  And I think that goes to show that you're not going

18 to see Mr. Harris ever again.

19          Your Honor did receive a letter.

20          THE COURT:  I did, from the minister at the detention

21 facility?

22          MR. EISELE:  Yes, and there was a letter from

23 Mr. Harris himself.

24          THE COURT:  You know what, I don't have that.  I

25 looked at CM/ECF this morning.  Do you have a copy that I can

1    take a look at?

2              Did it come through CM/ECF, sir?

3              MR. EISELE:  It did, it did.

4              THE COURT:  Jordan, can you hop on there and --

5              I have a letter from Mr. Stomarrow [ph], but I didn't

6    receive one from Mr. Harris.  And if there is one, I would like

7    to take a look at it.

8              We'll print it out.  Don't trouble yourself.  We'll

9    print it out.

10             Can we print it out here?  Does the printer here work?

11             MR. EISELE:  Thank you, Your Honor.

12             THE COURT:  And give me a second to read it.  I want

13   to make sure I've read it before you make reference to it.

14             MR. EISELE:  Okay.

15             MS. SEDDIQ:  Your Honor, there are -- actually, there

16   are two letters that would be sent from Mr. Harris.  One

17   contains the affidavit.

18             THE LAW CLERK:  Yes, so you're talking about the

19   earlier.

20             MS. SEDDIQ:  It's the earlier letter, right.

21             THE COURT:  Yes, ma'am.

22             THE DEPUTY CLERK:  Court's indulgence.

23             THE COURT:  Sure.

24        (Pause.)

25             MR. MITCHELL:  Your Honor, if I may while you're

1  waiting, Mr. Mebane just advised that the fine range has changed

2  in the PSR based on Your Honor's finding that the offense level

3  is lower, and it's now 15,000 to $10 million.

4  　　　　THE COURT:  Thank you.  And I revised my calculation

5  to lower it from 20,000 to 15,000.

6  　　　　All right.  Thank you.

7  　　　　Give me just a second, Mr. Eisele, to read this.

8  　　(Pause.)

9  　　　　THE COURT:  All right.  Thank you, Mr. Eisele, and for

10  giving me that time to read it.  I have read it carefully.

11  Thank you.

12  　　　　MR. EISELE:  Thank you.

13  　　　　Your Honor, it is against the law to distribute

14  marijuana in this country under federal law.  However, we can't

15  ignore the fact that the tide is turning with regard to

16  marijuana and that the state of Maryland has, essentially, in

17  many respects decriminalized marijuana and the possession of

18  marijuana.  They are already allowing medical marijuana.  That

19  is going to be happening in the state.

20  　　　　There are other states, such as Colorado and

21  California.  There is a recognition by our country, more slowly

22  by our government that marijuana is not the same thing as other

23  drugs, such as heroin, as cocaine.  And there's no evidence to

24  support the fact that they are anywhere near the same league of

25  crimes.  In fact, it may be in a few years that the majority of

states start considering legalization of marijuana or, at least, decriminalization.

So, with that as the background, ten years, although we recognize it is a mandatory minimum, is an extremely harsh sentence. Ten years of prison for someone who until this case had not served time in jail is a very long time. There are people, they get arrested in state court in Maryland, they can bounce around and commit various offenses.

In fact, one of the arguments against the enhancement for the essentially three points for a misdemeanor is that there are persons that come to this court -- you can shoot someone in Prince George's County and have a criminal history that is on par with this. And to that degree, we believe that it over-represents who Mr. Harris is as a person and what actually happened in that case.

He is a person, as you can see from the letter and certificates, that he has not sat by idly while he's been in detention. He's been in detention for quite a long time and many persons could give up. He's maintained contact with his family, children. He has not given up.

He has been a pleasure to be a client, although that's not a factor, but he has worked with us. It is clear that he is intelligent. As the PSR noted, he had his own business selling cars, a legitimate business. And, you know, the family is here to support him.

1    I do want to, before I forget, to ask for a

2 recommendation for placement.

3    THE COURT:  Please.

4    MR. EISELE:  He has family in Arizona and will soon

5 have more family there.  There's a facility called Safford.

6    THE COURT:  S-A-F-F-O-R-D?

7    MR. EISELE:  Yes, Your Honor.  And based on the

8 proximity of family and the importance of maintaining those

9 relationships, we'd ask for recommendation to that facility.

10    THE COURT:  Are there any programs that you think you

11 want me to recommend?

12    MR. EISELE:  Yes, we are going to ask for a drug

13 treatment recommendation.

14    THE COURT:  RDAP.

15    MR. EISELE:  Yes, we are going to ask for that

16 recommendation for RDAP, yes.

17    THE COURT:  Please continue, sir.

18    MR. EISELE:  And, Your Honor, as indicated in our

19 memorandum, the harshest penalties -- well, ten years is a harsh

20 penalty, but on top of that, the threat of removal from the

21 country for someone who for all intents and purposes has had his

22 life here is going back to a place away from this family, if

23 removed, is a severe punishment.  And although it is not extra

24 time in jail for Mr. Harris, it is devastating if such a thing

25 were to happen to be away from his children, his family, his

1   brothers and sisters.  We'd ask the Court to take that into

2   consideration as one of the factors in crafting a sentence.

3           The other thing I want to make sure that the Court --

4   I've asked the Court to do is to order that the PSR be amended.

5   This PSR is going to follow Mr. Harris to the facilities and

6   based on your acknowledgment of the objections or the agreement

7   between the parties, we'd ask that the PSR be amended as such.

8           THE COURT:  Make the amended PSR be consistent with

9   the "C" plea?

10          MR. EISELE:  Yes, Your Honor.  And that's all we have,

11  Your Honor.  Thank you.

12          THE COURT:  All right.

13          MR. EISELE:  And just briefly, I think Mr. Harris,

14  because of the letter, he can acknowledge on the record, but I

15  think he would let his letter and us speak for him.

16          THE COURT:  Sure.

17          MR. EISELE:  Thank you.

18          THE COURT:  Mr. Harris, we have been together here in

19  court many times in the course of this case.  I have found you

20  to be an intelligent and careful listener, and to pay close

21  attention.  I have appreciated that.

22          You, of course, have the right to do one of two things

23  right now.  You can remain silent, except for what you already

24  asked me to read, which I have just read and I will refer to or

25  you can make a statement.  Either way, the choice is yours.

1          If you choose to remain silent, other than what you

2     wrote, it's your right and I will not and cannot draw any

3     adverse inference against you.  If you do want to say something,

4     then -- beyond what you've said in your letter, you have an

5     absolute right to do that as well.

6          It almost would be an unspeakable act of unfairness

7     for someone to be given the authority to make the decision that

8     I have to make in just a moment here without allowing that

9     individual to personally address the person doing it.  So,

10    whatever decision you make, I respect it.  And when I evaluate

11    the 18 U.S. Code 3553 factors, I will make reference to what you

12    said in your written letter, because I made some marks on the

13    letter of things I wanted to talk about, so the choice is yours.

14         Why don't you tell your counsel what that choice is.

15    (Pause.)

16         THE COURT:  You don't have to stand.  I appreciate the

17    sign of respect, but if I get to sit, I don't require anybody

18    else to do anything otherwise.

19         THE DEFENDANT:  Well, Your Honor, I'm not much of a

20    public speaker and that's why I chose to write instead of

21    speaking, so.

22         THE COURT:  Okay, understood.

23         All right.  So, Mr. Harris, you know, it's amazing and

24    you've been here.  This is probably our seventh or eighth day in

25    court at one time or another with each other here.  It has

always struck me in the 19 years that I've been a judge that there's a sort of very -- there's a dynamic about when a person who is charged with a crime is in court.

You know, the lawyers are in court all the time, so it's a familiar environment for them. We have the marshals, thank goodness, they're in court all the time. And the court reporter is in court and has to try and wrestle with people who talk too fast, which I do sometimes myself. We've got our courtroom deputies to make sure everything is working and there are law enforcement folks and the judge, and we're here all the time. This is sort of, like, what we do for work.

But to that defendant and, of course, to their family and sometimes for the victims when they come to court, the case is all about them. And I think sometimes -- you know, we have all this paper. I have a stack of paper. There are over 230 filings in this case and they all say United States of America versus your name, Leonaldo Harris. And you -- we tend sometimes to, sort of, forget that those names are people. And we talk even sometimes about the defendant, so we don't even personalize that.

And there's nothing more personal than a judge having to decide what sentence to impose. There's no more difficult thing that a judge can do and it should never, ever, ever be an easy decision. And I struggle with these decisions for the reasons that the United States has made good points and your

lawyers have done a very good job your behalf making good points as well.

And one of the things that we have to do and you were very patient during the guilty plea, because I had to start off talking about the statute, then the guidelines. And we spend more time -- sometimes it seems to me it sounds like we're tax accountant talking about level one, add two, minus three. And it seems like we're almost accountants more than we are dealing with a sentence that involves an evaluation.

Really, it comes down to two things. What is this person like that the judge has to sentence? And what does it require for a fair and appropriate sentence that's no greater than necessary, but sufficient? And what's the crime and how is the public to be protected? Those are really the two things.

So after going through all the math and doing the calculations, we finally get to what I think is really the most important aspect of this case. And that's the factors that tailor to who are you as an individual and what was this offense, and what does that mean to the public.

So, let's start about the history and characteristics of you. You came here, as you said in your letter, when you were 17. You came here from Jamaica. And you are in -- you may not feel you're a public speaker, but you are very -- your communication skills are excellent. You write clearly and cogently. You are clearly an intelligent man.

1          You have a calm demeanor, which makes me happy because

2   I don't think that you're a danger in terms of individual danger

3   to anyone.  You have paid close attention.  You have been

4   patient under circumstances when it could not have been easy to

5   be patient.  And you've had to sit in court with your family

6   members sitting behind you knowing that they are there and not

7   being able to communicate with them or have physical or other

8   contact with them.  That's tough.  I know it is.

9          You left school with an associates degree not because

10  you didn't have the ability to get more, but because you ran out

11  of the money.  And you were here, although you had permanent

12  legal status, you were not an American citizen.  As you said in

13  your letter, the -- you know, to try to get a job when on your

14  papers it says, can work with permission of IMS, it limits the

15  horizon of things that are there.

16         You express pride in your letter about what your

17  family means to you and your children, particularly, your three

18  children?  And there was the birth of that first child and the

19  fact that you -- although you have, I believe, the individual

20  talent and ability to do almost anything that you want to do,

21  whether it's a business or some other thing, you weren't able to

22  do that because the money wasn't there to complete your

23  education.  One could only imagine what you could have done with

24  the education that you had the ability to be able to obtain.

25         So, as you say in your letter, you look around, what

am I going to do?  What kind of jobs do I get?  Well, you can work at Chipotle making minimum wage or something.  You did what you could.  You tried to form the automobile project, but it doesn't make money like the other way that you went to.  And you realize now that eventually that path is a dead end, because it leads to us being someplace like this.

So, I have a person who is healthy, fortunately young enough where this sentence will be done and you can return then to society.  And I think you have the opportunity to make a productive contribution.  And the sincerity of what you want to do comes out loud and clear in your letter to me.

And not just from your letter, but the letter that was written by Mr. Stomarrow.  Mr. Stomarrow is -- he's a prison minister at Chesapeake Detention Center and he's writing because he has met with you three times a month for 22 months and he talks about the growth that you have made, and how you have tried to make the best out of what is clearly a difficult situation.  How you tried to help and counsel, and give guidance to younger people who are there.  And how you have -- he says, he's a man of humility who has turned his life around.

And that humility and that determination to come out of this when the sentence is over to do what you can for your family and to give back to them and for yourself comes out.  And he talks about how smart you are and how you're a veracious reader and how even if you're not in school, you're trying to

1    educate yourself.  All those are good things and they all speak

2    well of your potential to come out of the sentence and move on

3    to do good things.

4            The snapshot that I have of you in terms to this

5    offense, the offense itself does not describe what you are as a

6    person.  It's an aspect of it.  And absent this kind of conduct,

7    you have the potential to go and to -- to demonstrate the

8    rehabilitation and come out, and to make a difference to your

9    family and to yourself, and that factors into my considerations.

10   So that's your history and characteristics.

11           Now, the nature of the offense.  Well, Mr. Eisele is

12   right and to a certain extent Mr. Mitchell doesn't disagree.

13   Public attitude about marijuana has changed.  It's not universal

14   within the United States, but it has made some progress and --

15   but the states that have legalized it have legalized it for

16   personal consumption and not for commercial sale and

17   distribution.

18           And I think, as Mr. Mitchell points out and as the

19   Statement of Facts shows, this was an awful lot of marijuana.

20   We don't see -- if there's a -- if there's a blessing in the, in

21   the aspect of marijuana as a controlled substance, we don't see

22   the overdoses like we do with heroin.  We don't see the type of

23   physiological impact that methamphetamines and cocaine and crack

24   cocaine especially cause, the devastation there, but it is still

25   a controlled substance.  And of course, the law does not and no

state that has decriminalized aspects of marijuana use, either

for individual use, for medical use has decriminalized to make

legal the large scale commercial sale of it. So, that is still

in this country a serious offense.

I have to consider dangerousness to the community.

Well, the fact of drug distribution on the scale we deal with

here, of course, is a matter of danger to the community by its

very existence. You individually, I don't believe you pose a

danger to the community, a physical danger to the community.

There's nothing in your background that suggests that to me.

So, I've taken into consideration the nature and

seriousness of the offense. It was a large amount of marijuana,

a very large amount. The pictures talk about that. And a lot

of money involved and that's serious. And there is a danger to

the community manifestly that is involved.

Not a danger of you individually, but what drug

distribution causes, which is well recognized in terms of the

danger to the community.

The sentence must promote respect and a sentence

worthy of respect has to do two things. It has to be severe

enough to meet the severity of the crime, but not so severe that

it is overly harsh.

In your letter to me, you asked if I would consider a

lesser sentence than the 120 months. And you wrote that from

the heart and I understand that. You, I think, understand

1  through your counsel that by law, I'm not allowed to do that.

2  Congress has taken that ability away from me.  It has said that

3  I must impose a sentence of at least 120 months.

4       Now, the guidelines, had they -- had it not been for

5  this plea would have been overwhelming.  It would have been over

6  20 years.  And had this not been a guidelines case, would I have

7  sentenced you to 20 years?  No, I would not, because I don't

8  think that that would be sufficient, but not greater than

9  necessary to accomplish what has to be done.

10      I need to take into consideration the guidelines.

11 I've done that, but I've also taken into consideration the law

12 that allows me to bind myself to this plea.  I think it was a

13 fair plea; fairly and heartily and toughly negotiated for your

14 benefit by your lawyers; and fairly, toughly negotiated by the

15 government in terms of the terms it got.

16      And so, I do believe that the sentence that is

17 sufficient, but not greater than necessary is the sentence I by

18 law must impose, which is that ten year sentence.  I have no

19 discretion, no ability under law to do a lesser one.

20      The one thing that makes me -- gives me some --

21 something which is of note is that the nearly three years that

22 you have been in detention is credited towards that, so that is

23 subtracted from that sentence.  And there is the ability, I'm

24 sure your lawyers have talked about it, to be able to earn good

25 time reductions that I have no doubt that you will earn.

1      I am going to recommend that the place of your

2   detention be at Safford, Arizona so you can be as available to

3   your family as possible.  And I'm going to recommend RDAP, which

4   is a drug treatment program, not necessarily because I think you

5   have the kind of dependency on drugs as some defendants do, but

6   because people in that program can earn additional benefits and

7   privileges.  And I believe that from what Mr. Stomarrow has

8   shown and from the growth that you have shown me in the letter

9   that you sent to me, that you would benefit from programs that

10   will allow you to do good for others while you are still

11   incarcerated.

12      I'm not going to impose a fine, because of course, it

13   would be unable to pay a fine.  The $100 special assessment is

14   mandatory and that will be paid as directed by the probation

15   department.

16      I am going to place you on supervised release for a

17   period of five years.  I'm going to impose the conditions that

18   were recommended by the probation department; drug and alcohol

19   evaluation, testing and treatment.  Require that when your

20   incarceration is over that you surrender to the immigration

21   authorities for whatever proceedings they deem to be appropriate

22   and to pay the $100 special assessment as directed by the

23   probation department.

24      I have signed the Forfeiture Order.  There is no

25   request for restitution, is that right, Mr. Mitchell?

1          MR. MITCHELL:  That's correct, Your Honor.

2          THE COURT:  All right.  And so, for that reason, the

3   sentence that I believe is sufficient, but not greater than

4   necessary is, as I have said, 120 months with credit to you for

5   the time that you have been in detention, which stems back to

6   April 18th, 2013.

7          I think I have covered everything.

8          Mr. Mitchell, are there charges that need to be

9   dismissed, sir?

10         MR. MITCHELL:  Yes, Your Honor.  The government

11  dismisses all but Count One of the Superseding Indictment.  The

12  government also dismisses the original Indictment, as well as

13  the Criminal Complaint.

14         THE COURT:  Okay.  And those motions are granted.

15         Is there anything further the United States believes I

16  need to address at this proceeding, other than advising

17  Mr. Harris of his appellate rights?

18         MR. MITCHELL:  No, Your Honor.

19         THE COURT:  All right.  Mr. Harris, of course that

20  plea letter that talks about giving up some of your appellate

21  rights, if you talk with Ms. Seddiq and Mr. Eisele and you

22  believe there is any basis for appealing my sentence, then you

23  must enter any Notice of Appeal within 14 days of the entry of

24  the Judgment of Conviction.  I'm going to try to get that done

25  today.  If it's not done today, it will be very early next week.

1          Should the United States appeal -- I don't think

2    anybody has the right to appeal, because I bound myself by the

3    agreed upon sentence.  But should the United States appeal, you

4    have 14 days from the time that they enter their Notice of

5    Appeal.

6          And with that, I think that the sentence I just

7    announced is sufficient, but not greater than necessary to

8    comply with the goals of 18 U.S. Code 3553.

9          So, Mr. Harris, good luck to you, sir, and I hope that

10   you can come out and be the person with your family that they

11   want you to be and that you can be.

12          And with that, I thank our courtroom staff for their

13   help and we're in recess now.  Thank you.

14          MR. EISELE:  Your Honor, I have one thing that may

15   already be on the record.  The request for amendment to the PSR.

16          THE COURT:  Oh, yes, I didn't say anything about that,

17   but yes, I will -- thank you very much, Mr. Eisele, for

18   reminding me.  I will request that Mr. Mebane modify the PSR to

19   be consistent with the findings of what was in the "C" plea and

20   that that will eliminate those enhancements that were reflected

21   in it, all right.

22          MR. EISELE:  Thank you, Your Honor.

23          THE COURT:  Thank you.  I appreciate that.

24      (Recess at 10:45 a.m.)

25                          *    *    *

1              CERTIFICATE OF COURT REPORTER

2      I, Linda C. Marshall, certify that the foregoing is a

3  correct transcript from the record of proceedings in the

4  above-entitled matter.

5

6

7             /s/

8             _____
              Linda C. Marshall, RPR
              Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$10 [2]** 27/2 38/3
**$10 million [2]** 27/2 38/3
**$100 [3]** 27/3 50/13 50/22
**$2 [3]** 32/5 32/6 32/9
**$2 million [1]** 32/5
**$20 [2]** 32/3 32/3
**$20,000 [1]** 27/2
**$250,000 [2]** 29/15 31/1
**$450,000 [1]** 31/25

**/**

**/s [1]** 54/7

**1**

**1,000 kilos [1]** 28/24
**10 [1]** 26/2
**108 [1]** 26/21
**10:45 [1]** 52/24
**11 [16]** 2/19 2/24 10/8 10/10 11/18
11/21 12/2 12/20 13/17 19/7 19/8 20/2
20/3 20/3 23/20 24/25
**12 [1]** 26/9
**120 [9]** 25/8 26/22 28/13 32/18 32/23
34/20 48/24 49/3 51/4
**13 [1]** 16/11
**13-202 [1]** 1/5
**1300 pounds [1]** 28/20
**135 [2]** 26/22 26/22
**14 [2]** 51/23 52/4
**14452 [1]** 1/18
**14th [1]** 26/4
**15,000 [3]** 31/18 38/3 38/5
**17 [1]** 44/22
**171 [1]** 3/2
**179,000 [2]** 31/17 31/18
**18 [3]** 13/11 42/11 52/8
**186 [1]** 9/3
**187 [1]** 3/9
**18th [2]** 17/21 51/6
**19 [3]** 3/9 23/12 43/1

**2**

**20 [2]** 49/6 49/7
**20,000 [1]** 38/5
**200 [1]** 1/14
**200,000 [3]** 29/15 31/17 31/19
**2002 [1]** 10/16
**2009 [1]** 26/2
**201 [1]** 1/18
**2010 [2]** 26/4 26/12
**2012 [1]** 26/9
**2013 [13]** 7/21 8/10 8/11 8/14 16/10
17/11 17/20 17/21 26/10 26/12 30/11
30/16 51/6
**2015 [7]** 2/20 3/2 3/9 7/20 16/9 16/18
16/19
**2016 [4]** 1/7 2/14 7/19 16/7
**202 [2]** 1/5 2/3
**20770 [1]** 1/15
**20772 [1]** 1/19
**21,000 [1]** 31/17
**215 [1]** 10/15
**22 [1]** 46/15

**3**

**3,000 [1]** 23/9
**3,000 kilos [1]** 28/25
**30 [3]** 23/7 25/17 26/20
**301 [1]** 1/23
**301-344-4433 [1]** 1/15
**301-513-7832 [1]** 1/19
**32 [3]** 10/9 10/9 25/14
**3229 [1]** 1/23
**327 [1]** 25/7
**344-3229 [1]** 1/23
**3553 [5]** 13/11 28/12 34/21 42/11 52/8
**36 [4]** 25/24 26/5 26/11 26/12
**38 [3]** 25/5 26/6 26/6
**39 [1]** 25/24
**3B1.1A [1]** 24/14
**3E1.1A [1]** 25/16
**3rd [2]** 3/2 16/19

**4**

**404 [1]** 33/4
**421 [1]** 10/15
**4433 [1]** 1/15

**5**

**500 [1]** 28/20
**5th [2]** 7/19 16/7

**6**

**6,000 [1]** 31/18
**6500 [1]** 1/14

**7**

**7832 [1]** 1/19
**7th [2]** 7/20 16/8

**9**

**9-millimeter [1]** 23/12
**922 [1]** 33/18
**931 [1]** 10/20
**97 [1]** 30/18
**98 [1]** 30/18
**9:20 [1]** 1/8

**A**

**a.m [2]** 1/8 52/24
**ability [1]** 12/7 19/10 22/7 45/10 45/20
45/24 49/2 49/19 49/23
**able [5]** 22/19 45/7 45/21 45/24 49/24
**about [30]** 2/13 4/8 4/10 6/20 13/10 14/5
15/6 15/19 15/25 20/15 20/24 27/17
32/3 32/4 37/18 42/13 43/2 43/14 43/19
44/5 44/7 44/20 45/16 46/16 46/24
47/13 48/13 49/24 51/20 52/16
**above [1]** 54/4
**above-entitled [1]** 54/4
**abroad [1]** 34/17
**absent [2]** 18/18 47/6
**absolute [1]** 42/5
**absolutely [1]** 20/14
**accept [4]** 19/7 22/17 23/2 25/15
**acceptance [2]** 22/3 22/4
**accepted [2]** 2/21 11/18
**accepts [2]** 6/19 6/19
**accomplish [2]** 20/17 49/9
**accountant [1]** 44/7
**accountants [1]** 44/8
**accounting [1]** 31/19
**accounts [1]** 32/7
**accurate [1]** 11/6
**acknowledge [1]** 41/14
**acknowledged [2]** 11/12 13/5
**acknowledgment [1]** 41/6
**across [3]** 29/16 29/19 31/20
**act [3]** 6/5 15/7 42/6
**Action [1]** 1/4
**activities [2]** 34/5 34/7
**activity [2]** 6/4 24/16
**actual [4]** 6/22 6/24 7/1 11/6
**actually [7]** 12/13 17/23 32/22 33/15
35/2 37/15 39/14
**add [3]** 23/15 29/11 44/7
**added [1]** 24/4
**addition [1]** 3/18
**additional [4]** 4/24 14/24 24/25 50/6
**address [4]** 3/11 19/22 42/9 51/16
**addressed [1]** 23/1
**adjusted [3]** 25/14 25/17 25/19
**adjustment [3]** 23/18 24/12 24/19
**admissible [1]** 15/12
**admit [1]** 33/4
**admitted [2]** 31/20 33/23
**Admittedly [1]** 11/22
**adverse [1]** 42/3
**advised [1]** 38/1
**advising [1]** 51/16
**affidavit [14]** 3/22 3/23 4/7 4/24 5/18
7/13 7/18 7/24 9/1 9/9 14/2 15/14 16/6
37/17
**after [14]** 6/19 7/21 7/22 8/10 8/20 9/13
12/13 16/9 18/5 19/11 22/24 28/14 34/2
44/15
**again [5]** 6/17 24/18 30/25 31/23 36/18
**against [5]** 12/12 16/14 38/13 39/9 42/3
**age [1]** 26/2
**agent [2]** 2/5 6/5
**agents [1]** 4/3
**aggressive [2]** 21/11 21/12
**ago [1]** 2/15
**agree [5]** 19/10 20/7 22/23 24/20 24/21
**agreed [11]** 13/6 19/9 22/23 23/22 25/8
28/14 28/23 32/10 32/23 35/6 52/3
**agreeing [1]** 24/24
**agreement [7]** 2/22 20/5 23/19 23/23
24/8 24/20 41/6

# A

**ahead [1]** 35/23
**AIDED [1]** 1/24
**airlines [1]** 29/13
**alcohol [1]** 50/18
**all [38]** 2/7 7/10 9/22 12/25 13/12 14/9 14/9 14/10 17/15 19/20 20/10 21/8 22/21 27/8 27/19 28/20 34/19 35/6 35/17 38/6 38/9 40/21 41/10 41/12 42/23 43/4 43/6 43/10 43/14 43/15 43/16 44/15 47/1 47/1 51/2 51/11 51/19 52/21
**allow [4]** 10/5 17/1 25/12 50/10
**allowed [2]** 10/12 49/1
**allowing [2]** 38/18 42/8
**allows [3]** 20/18 23/20 49/12
**almost [3]** 42/6 44/8 45/20
**already [6]** 14/5 18/18 34/24 38/18 41/23 52/15
**also [12]** 2/5 5/7 9/14 13/10 14/15 24/10 26/25 33/6 34/22 36/3 49/11 51/12
**although [8]** 16/1 16/25 29/2 39/3 39/21 40/23 45/11 45/19
**always [1]** 43/1
**am [8]** 12/1 13/16 17/7 19/2 20/5 46/1 50/1 50/16
**amazing [1]** 42/23
**amended [3]** 41/4 41/7 41/8
**amendment [3]** 6/7 6/9 52/15
**AMERICA [2]** 1/4 2/3 43/16
**American [1]** 45/12
**amount [6]** 23/8 28/23 28/25 29/1 48/12 48/13
**amounts [2]** 30/21 31/25
**analysis [1]** 4/13
**and on [1]** 3/5
**and/or [1]** 27/12
**announced [1]** 52/7
**another [1]** 31/22 33/13 33/25 42/25
**answer [1]** 16/24
**answering [1]** 13/7
**any [17]** 3/9 6/19 9/11 10/17 11/7 25/18 27/5 28/5 29/3 29/8 29/9 33/15 33/16 40/10 42/2 51/22 51/23
**anybody [2]** 42/17 52/2
**anyone [2]** 12/11 45/3
**anything [5]** 36/13 42/18 45/20 51/15 52/16
**anywhere [1]** 38/24
**appeal [7]** 13/15 21/20 51/23 52/1 52/2 52/3 52/5
**appealing [1]** 51/22
**APPEARANCES [1]** 1/12
**appears [2]** 15/15 31/12
**appellate [2]** 51/17 51/20
**applicable [1]** 7/23
**application [2]** 19/20 26/14
**applied [1]** 24/1
**apply [4]** 10/5 11/9 19/21 20/10 22/22 24/11
**appreciate [5]** 3/12 3/14 9/23 42/16 52/23
**appreciated [1]** 41/21
**approach [2]** 20/23 27/21

**appropriate [10]** 9/15 11/18 20/8 22/20 23/22 27/20 32/18 32/24 44/12 50/21
**appropriately [1]** 21/12
**April [12]** 7/21 8/10 8/11 8/14 17/21 26/4 26/9 26/11 26/12 30/11 30/16 51/6
**April 14th [1]** 26/4
**April 18th [1]** 51/6
**April of [1]** 30/11
**are [49]** 2/8 13/22 14/9 14/19 17/3 17/11 17/12 17/15 19/1 21/6 21/11 22/18 28/6 30/15 30/21 31/5 31/24 32/16 36/13 37/15 37/16 38/18 38/20 38/24 39/6 39/11 40/10 40/12 40/15 43/4 43/10 43/15 43/18 44/8 44/14 44/18 44/22 44/23 44/24 44/25 45/6 45/15 46/19 46/24 47/1 47/5 50/10 51/8 51/14
**argue [2]** 21/18 22/9
**argued [2]** 13/20 33/9
**arguing [2]** 23/21 32/21
**argument [5]** 6/3 6/23 6/25 7/4 14/1
**arguments [1]** 39/9
**Arizona [2]** 40/4 50/2
**Arrowood [2]** 8/16 8/22
**Arrowood's [1]** 9/11
**articulation [1]** 10/13
**as [70]**
**ascertaining [1]** 12/4
**ask [7]** 21/6 40/1 40/9 40/12 40/15 41/1 41/7
**asked [6]** 6/4 14/23 19/22 41/4 41/24 48/23
**asking [1]** 12/4
**aspect [3]** 44/17 47/6 47/21
**aspects [2]** 20/19 48/1
**asserted [3]** 10/23 13/18 16/13
**asserting [2]** 20/19
**assessment [3]** 27/3 50/13 50/22
**assistance [4]** 11/1 16/23 17/8 25/11
**associate [2]** 12/17
**associates [2]** 12/5 45/9
**assume [1]** 7/11
**assuming [1]** 8/14
**at [51]** 2/5 2/21 2/24 3/24 4/3 4/4 4/6 4/6 6/1 8/18 8/22 9/15 10/14 10/15 11/10 11/23 12/20 13/25 15/13 17/4 18/7 18/24 19/10 19/24 20/2 21/24 25/23 25/24 26/2 26/11 28/18 29/22 30/19 30/20 30/23 32/15 33/5 36/6 36/20 36/25 37/1 37/7 39/1 42/25 46/2 46/14 49/3 50/2 51/16 52/24
**attached [2]** 3/21 14/22
**attended [1]** 36/5
**attention [5]** 9/25 14/2 19/6 41/21 45/3
**attitude [1]** 47/13
**attorney [7]** 1/14 5/13 16/2 17/3 20/6 20/17 22/7
**attorneys [1]** 14/10
**attributable [2]** 28/23 32/11
**augment [1]** 3/15
**authored [1]** 9/1
**authorities [2]** 15/3 50/21
**authority [1]** 42/7

# B

**authorizes [1]** 20/4
**automobile [1]** 46/3
**available [1]** 50/2
**awaiting [1]** 8/21
**aware [2]** 33/1 33/14
**away [7]** 15/14 20/18 23/20 35/10 40/22 40/25 49/2
**awful [1]** 47/19

# B

**back [8]** 10/4 17/11 20/18 26/8 34/4 40/22 46/23 51/5
**background [3]** 2/17 39/3 48/10
**backs [1]** 15/14
**bag [3]** 30/24 31/17 31/18
**bale [1]** 33/7
**bales [2]** 30/15 33/20
**bank [1]** 32/7
**bare [1]** 12/2
**bare-bones [1]** 12/2
**bargain [2]** 20/17 22/8
**bargaining [2]** 20/13 22/15
**bargains [1]** 25/4
**base [1]** 23/6
**based [7]** 17/24 18/21 22/21 30/13 38/2 40/7 41/6
**basis [6]** 13/2 13/3 15/9 21/3 21/18 51/22
**be [93]**
**bear [1]** 5/18
**bearing [1]** 31/5
**because [30]** 4/14 5/1 11/22 12/14 13/19 13/21 23/7 23/12 23/19 23/22 24/2 24/15 25/15 26/7 26/22 35/3 41/14 42/12 44/4 45/1 45/9 45/10 45/22 46/5 46/14 49/7 50/4 50/6 50/12 52/2
**become [2]** 17/7 17/16
**bedroom [3]** 23/14 32/15 33/17
**been [32]** 2/22 4/2 4/9 5/8 8/8 9/2 10/9 13/4 14/5 14/8 15/5 15/24 17/21 18/22 25/7 32/10 35/6 36/5 39/17 39/18 39/21 41/18 42/24 43/1 45/3 45/4 49/4 49/5 49/5 49/6 49/22 51/5
**before [1]** 1/10 2/13 3/24 6/18 6/20 7/22 8/11 13/5 15/15 15/16 18/22 19/3 30/9 35/25 37/13 40/1
**began [1]** 14/13
**begin [2]** 2/13 18/3
**beginning [2]** 20/23 21/9
**begins [1]** 25/23
**behalf [4]** 2/4 2/8 3/3 44/1
**behind [1]** 45/6
**being [3]** 34/4 45/7 46/6
**believe [16]** 18/10 25/18 28/12 29/13 30/14 30/17 30/18 33/2 34/8 39/13 45/19 48/8 49/16 50/7 51/3 51/22
**believed [4]** 5/18 19/13 23/11 24/14
**believes [4]** 32/18 34/13 34/20 51/15
**bench [2]** 27/24 28/1
**benefit [4]** 22/2 25/1 49/14 50/9
**benefits [1]** 50/6
**best [2]** 12/22 46/17
**better [1]** 20/1
**between [7]** 2/22 10/24 16/16 26/9 27/2 29/14 41/7

# B

**Beverly [1]** 26/3
**beyond [3]** 13/9 17/1 42/4
**bind [2]** 23/1 49/12
**birth [1]** 45/18
**bit [3]** 21/21 27/12 36/10
**blessing [1]** 47/20
**blurred [1]** 17/16
**bones [1]** 12/2
**both [1]** 13/16
**bottom [1]** 31/25
**bounce [1]** 39/8
**bound [5]** 19/9 22/23 22/24 23/22 52/2
**bounds [1]** 21/11
**box [1]** 18/5
**brief [2]** 7/25 28/12
**briefed [6]** 3/4 7/9 7/12 9/20 10/3 18/22
**briefing [2]** 11/14 11/20
**briefly [4]** 4/16 4/22 32/17 41/13
**bring [8]** 5/2 9/25 14/2 14/24 17/13 35/3 35/7 35/11
**brother [1]** 36/2
**brothers [1]** 41/1
**brought [1]** 17/14
**BRYAN [2]** 1/13 2/4
**bulk [1]** 29/5
**burden [3]** 9/14 9/17 10/10
**business [3]** 39/23 39/24 45/21
**but [49]** 3/7 3/14 5/14 8/4 12/2 13/25 14/5 15/8 15/22 17/24 18/10 20/2 22/13 23/9 24/5 24/21 25/25 28/12 32/8 34/9 34/10 34/20 35/11 36/12 37/5 39/22 40/20 41/14 42/17 43/12 44/13 44/23 45/10 46/3 46/12 47/14 47/15 47/24 48/16 48/21 49/8 49/11 49/17 50/5 51/3 51/11 52/3 52/7 52/17
**buy [1]** 21/22
**Byrd [4]** 3/23 9/1 14/2 16/1
**Byrd's [1]** 15/14

# C

**calculate [1]** 19/3
**calculation [10]** 13/11 19/16 22/11 23/24 26/16 26/17 26/25 27/3 27/10 38/4
**calculations [3]** 23/4 23/5 44/16
**Cali [1]** 31/18
**caliber [1]** 23/13
**California [8]** 4/11 8/21 26/4 29/12 29/17 30/23 33/17 38/21
**call [1]** 14/3
**called [2]** 17/12 40/5
**calling [3]** 2/2 6/9 15/2
**calm [1]** 45/1
**came [3]** 12/16 44/21 44/22
**can [25]** 18/25 19/3 20/17 27/22 31/25 35/9 35/19 36/25 37/4 37/10 39/7 39/11 39/16 41/14 41/23 41/25 43/23 45/14 46/1 46/8 46/22 50/2 50/6 52/10 52/11
**can't [1]** 38/14
**cannot [1]** 42/2
**capable [1]** 17/2
**captioned [1]** 16/11
**careful [1]** 41/20
**carefully [2]** 11/25 38/10

**Carlton [5]** 4/8 8/7 15/19 15/19 15/22
**carried [1]** 33/15
**cars [1]** 39/24
**case [48]** 2/2 2/3 3/1 3/24 5/9 6/15 6/22 9/3 13/9 13/23 14/9 15/4 16/10 16/11 17/7 17/11 17/13 17/20 17/20 18/3 18/3 18/11 20/8 20/14 20/25 21/2 21/5 21/9 21/13 21/17 21/19 22/22 26/23 28/8 28/13 29/6 32/19 33/2 33/6 34/9 34/23 39/5 39/15 41/19 43/13 43/16 44/17 49/6
**cash [2]** 29/12 31/19
**category [5]** 25/7 26/18 26/19 26/20 26/21
**cause [2]** 15/15 47/24
**causes [2]** 34/16 48/17
**Center [1]** 46/14
**certain [3]** 20/19 22/10 47/12
**certainly [3]** 32/21 34/1 34/6
**CERTIFICATE [1]** 54/1
**certificates [1]** 39/17
**certify [1]** 54/2
**cetera [2]** 29/12 31/19
**chance [1]** 27/16
**changed [2]** 23/25 44/20 47/10
**changing [1]** 29/3
**characteristics [3]** 23/25 44/20 47/10
**characterization [1]** 11/5
**charge [4]** 16/10 26/2 26/24 33/18
**charged [2]** 26/3 43/3
**charges [2]** 15/4 51/8
**check [1]** 24/5
**Cherrywood [1]** 1/14
**Chesapeake [1]** 46/14
**child [1]** 45/18
**children [3]** 39/20 40/25 45/17 45/18
**Chipotle [1]** 46/2
**choice [4]** 42/1 41/25 42/13 42/14
**choose [1]** 42/1
**chose [1]** 42/20
**chronology [1]** 10/4
**Circuit [2]** 10/16 10/19
**circumstance [2]** 18/8 18/17
**circumstances [7]** 2/18 14/25 17/1 29/5 45/4
**cited [2]** 23/19 36/11
**citing [1]** 24/13
**citizen [1]** 45/12
**claim [1]** 6/23
**clarify [1]** 14/6
**clear [9]** 5/22 8/18 9/24 20/2 26/14 34/13 36/12 39/22 46/11
**clearly [6]** 17/17 23/7 26/13 44/24 44/25 46/17
**CLERK [1]** 37/18
**client [4]** 27/14 36/1 36/3 39/21
**clients [1]** 21/13
**close [8]** 4/12 10/25 16/23 17/8 25/2 25/10 41/20 45/3
**closet [1]** 23/13
**CM [2]** 36/25 37/2
**CM/ECF [2]** 36/25 37/2
**co [1]** 29/23
**co-defendant [1]** 29/23
**coast [1]** 4/11

**cocaine [4]** 9/5 38/23 47/23 47/24
**Code [3]** 13/11 42/11 52/8
**cogently [1]** 44/25
**cognizant [1]** 17/7
**collateral [1]** 13/14
**colloquy [2]** 12/23 19/8
**Colorado [1]** 38/20
**come [10]** 8/20 17/13 21/18 37/2 39/11 43/13 46/21 47/2 47/8 52/10
**comes [5]** 21/24 36/10 44/10 46/11 46/23
**comfortable [1]** 2/11
**coming [1]** 7/11
**comment [1]** 14/5
**commercial [3]** 29/13 47/16 48/3
**commit [1]** 39/8
**communicate [1]** 45/7
**communication [1]** 44/24
**community [6]** 48/5 48/7 48/9 48/9 48/15 48/18
**company [1]** 5/23 8/19 15/1
**competent [9]** 11/1 12/8 16/24 17/8 20/13 21/7 22/15 25/2 25/11
**Complaint [1]** 51/13
**complete [2]** 21/17 45/22
**comply [1]** 52/8
**COMPUTER [1]** 1/24
**COMPUTER-AIDED [1]** 1/24
**concerned [1]** 12/14
**concerning [1]** 28/1
**conclusory [1]** 16/3
**condition [1]** 12/9
**conditionally [2]** 19/9 22/17
**conditions [1]** 50/17
**condoned [1]** 29/6
**conduct [2]** 6/6 26/7 26/8 33/5 33/10 47/6
**conducted [2]** 2/19 11/18 14/13 19/8
**conference [2]** 27/24 28/1
**confirm [1]** 27/11
**Congress [1]** 49/2
**connected [1]** 15/24
**connection [1]** 3/24
**consequences [3]** 13/14 13/14 13/15
**consider [2]** 48/5 48/23
**consideration [4]** 41/2 48/11 49/10 49/11
**considerations [1]** 47/9
**considering [1]** 39/1
**consistent [3]** 11/15 41/8 52/19
**conspiracy [3]** 9/4 28/24 32/11
**constitute [1]** 21/4
**construed [1]** 9/9
**consumption [1]** 47/16
**contact [2]** 39/19 45/8
**contacted [1]** 15/3
**contained [2]** 4/8 15/18
**contains [2]** 8/1 37/17
**contemplated [3]** 23/18 24/8 24/19
**contemplates [1]** 20/12
**contendere [1]** 6/18
**contesting [1]** 24/6
**context [1]** 6/13
**continuation [1]** 31/14
**continue [3]** 14/23 17/1 40/17

# C

continued [1] 12/19
contrary [2] 9/12 9/12
contribution [1] 46/10
controlled [6] 15/2 23/8 24/3 29/18 47/21 47/25
convict [1] 7/1
convicted [1] 33/8
Conviction [1] 51/24
convince [1] 16/13
convinced [1] 17/8
cooperating [1] 28/2
cooperation [2] 22/2 22/3
copies [1] 30/7
copy [2] 35/3 36/25
Corey [1] 36/3
correct [10] 2/9 2/10 7/3 8/24 10/7 25/21 27/15 30/17 51/1 54/3
correctness [1] 15/16
could [12] 5/18 12/19 13/8 13/24 15/11 18/8 21/20 39/19 45/4 45/23 45/23 46/3
counsel [23] 2/5 2/15 3/1 3/12 4/3 11/1 11/13 11/13 16/24 17/9 19/6 20/13 21/17 22/15 22/25 24/23 25/2 25/11 27/20 28/14 42/14 46/18 49/1
count [2] 28/18 51/11
counter [1] 33/21
counteract [1] 5/19
country [7] 29/16 31/20 34/4 38/14 38/21 40/21 48/4
County [1] 39/12
couple [1] 29/24
course [20] 9/14 14/16 16/9 28/10 28/22 28/24 29/17 29/22 29/25 31/6 32/13 32/19 33/23 41/19 41/22 43/12 47/25 48/7 50/12 51/19
court [35] 1/1 1/23 3/25 5/3 5/13 6/18 6/19 7/22 9/12 11/3 17/13 18/2 18/9 18/15 18/15 27/25 28/3 32/1 34/22 39/7 39/11 41/1 41/3 41/4 41/19 42/25 43/3 43/4 43/6 43/6 43/7 43/13 45/5 54/1 54/8
Court's [2] 18/10 37/22
courtroom [4] 35/10 36/1 43/9 52/12
covered [3] 12/1 27/8 51/7
crack [1] 47/23
crafting [1] 41/2
credibility [1] 21/15
credible [3] 10/21 11/11 11/16
credibly [4] 10/23 13/18 14/3 16/13
credit [1] 51/4
credited [1] 49/22
crime [3] 43/3 44/13 48/21
crimes [1] 38/25
criminal [26] 1/4 2/3 2/23 6/4 9/2 10/8 11/19 14/10 14/11 17/2 20/3 24/16 25/6 25/20 25/23 25/25 26/1 26/17 26/18 26/19 26/20 32/20 32/22 33/10 39/12 51/13
criteria [1] 22/22
currency [1] 29/15
current [1] 26/7
currently [1] 3/10
custody [3] 17/21 19/19 26/21

# D

D.C [1] 3/24
danger [8] 45/2 45/2 48/7 48/9 48/9 48/14 48/16 48/18
dangerousness [1] 48/5
date [1] 8/7
dated [2] 7/18 26/2
dates [1] 17/11
day [2] 14/20 42/24
days [10] 2/15 5/11 5/12 9/13 14/14 18/5 20/25 21/1 51/23 52/4
dead [1] 46/5
deal [3] 2/12 12/18 48/6
dealing [1] 44/8
deals [1] 33/16
debriefed [2] 4/9 15/25
decide [5] 19/10 21/24 22/16 22/20 43/22
decided [1] 18/12
decision [11] 12/7 12/8 12/10 13/21 13/24 21/20 25/3 25/12 42/7 42/10 43/24
decision-making [1] 12/10
decisions [1] 43/24
decriminalization [1] 39/2
decriminalized [3] 38/17 48/1 48/2
deem [1] 50/21
defendant [38] 1/7 1/17 2/22 6/17 9/10 9/16 10/21 10/22 10/25 11/11 13/18 16/23 18/5 18/7 18/11 20/4 22/2 24/2 28/2 28/17 28/22 28/24 29/13 29/23 30/22 31/6 31/7 31/14 31/20 32/10 32/12 33/5 33/8 33/15 34/2 34/11 43/12 43/19
defendant's [6] 9/14 23/13 30/19 32/15 32/20 33/10
defendants [1] 50/5
defending [1] 12/15
defense [6] 5/8 14/10 14/12 17/2 20/16 22/7
degree [4] 12/5 12/5 39/13 45/9
delay [4] 10/24 16/16 16/20 17/19
demanded [1] 18/11
demeanor [1] 45/1
demonstrate [1] 47/7
denied [1] 18/24
department [11] 19/5 19/12 19/21 19/24 23/11 23/15 24/1 24/13 50/15 50/18 50/23
dependency [1] 50/5
deported [1] 34/4
deputies [1] 43/9
deputy [1] 35/10
describe [1] 47/5
described [1] 18/18
detail [1] 14/25
details [1] 17/16
detention [7] 36/20 39/18 39/18 46/14 49/22 50/2 51/5
determination [1] 46/21
determine [3] 11/15 11/17 12/11
determined [2] 13/2 13/12
determining [1] 10/5
deterrence [4] 34/1 34/8 34/11 34/12

# (D continued)

devastating [1] 40/24
devastation [1] 47/24
developed [1] 10/18
did [19] 5/4 5/5 9/25 12/19 12/22 17/1 17/8 19/6 19/7 25/15 27/5 27/18 33/1 36/19 36/20 37/2 37/3 37/3 46/2
didn't [4] 35/3 37/5 45/10 52/16
difference [1] 47/8
different [2] 31/13 33/2
difficult [2] 43/22 46/17
direct [1] 35/11
directed [3] 6/4 50/14 50/22
direction [1] 29/14
disagree [1] 47/12
discovered [1] 5/24
discretion [1] 49/19
discussed [4] 10/14 10/14 10/14 12/25
discusses [1] 7/19
dismissed [2] 18/6 51/9
dismisses [2] 51/11 51/12
disposition [1] 20/8
distances [1] 36/2
distribute [4] 9/4 9/5 29/21 38/13
distributing [1] 24/3
distribution [3] 47/17 48/6 48/17
district [5] 1/1 1/1 1/11 9/2 14/18
DIVISION [1] 1/2
do [46] 4/18 14/11 17/24 18/10 18/24 20/13 20/24 20/24 21/23 21/24 22/17 22/18 24/5 25/18 28/4 28/12 35/3 35/5 35/18 35/19 36/25 40/1 41/4 41/22 42/3 42/5 42/18 43/8 43/11 43/23 44/5 45/20 45/20 45/22 46/1 46/1 46/11 46/22 47/3 47/22 48/20 49/1 49/16 49/19 50/5 50/10
document [2] 2/14 8/10
does [15] 9/10 9/10 10/10 14/3 15/17 20/1 20/10 20/10 21/23 29/3 37/10 44/11 44/19 47/5 47/25
doesn't [7] 5/18 16/4 16/5 22/2 26/15 46/4 47/12
doing [4] 6/8 7/16 42/9 44/15
dollar [2] 30/21 31/24
dollars [2] 32/4 32/8
don't [23] 4/16 8/2 8/4 13/25 17/23 21/21 21/21 33/18 35/2 36/11 36/24 37/8 42/14 42/16 42/17 43/19 45/2 47/20 47/21 47/22 48/8 49/7 52/1
done [13] 3/6 10/1 19/23 27/11 29/6 29/7 44/1 45/23 46/8 49/9 49/11 51/24 51/25
doubt [2] 13/9 49/25
down [3] 6/1 8/21 44/10
draw [1] 42/2
drifted [2] 6/15 6/22
drive [1] 20/17
driving [1] 26/3
drug [10] 28/17 29/9 29/18 31/12 34/18 40/12 48/6 48/16 50/4 50/18
drugs [3] 13/22 38/23 50/5
Due [1] 4/25
during [5] 14/14 28/24 29/25 32/12 44/4
dwell [1] 29/25
dynamic [1] 43/2

# E

**earlier [6]** 11/14 11/20 15/16 27/12 37/19 37/20
**early [1]** 51/25
**earn [3]** 49/24 49/25 50/6
**east [1]** 4/11
**easy [2]** 43/24 45/4
**ECF [8]** 3/2 3/6 3/9 3/19 3/21 3/22 36/25 37/2
**educate [1]** 47/1
**education [2]** 45/23 45/24
**educational [1]** 12/4
**EDWIN [1]** 1/13
**effective [1]** 22/14
**eight [6]** 4/1 4/6 7/24 15/17 16/3 30/12
**eighth [1]** 42/24
**EISELE [28]** 1/17 2/8 3/12 4/16 9/19 9/24 10/7 10/17 11/22 14/1 14/16 17/3 19/2 21/11 24/5 25/18 27/5 27/12 27/22 28/9 30/6 32/21 35/17 38/7 38/9 47/11 51/21 52/17
**Eisele's [1]** 11/5
**either [3]** 32/23 41/25 48/1
**elements [1]** 13/1
**elevate [1]** 20/20
**eliminate [1]** 52/20
**else [1]** 42/18
**employee [1]** 15/1
**end [2]** 31/17 46/5
**enforcement [3]** 8/9 30/12 43/10
**engage [2]** 34/5 34/6
**engaged [1]** 28/17
**enhancement [7]** 22/10 22/12 23/12 23/21 23/24 24/15 39/9
**enhancements [4]** 22/10 22/11 22/13 52/20
**enormously [1]** 14/9
**enough [3]** 17/6 46/8 48/21
**enter [4]** 12/12 25/3 51/23 52/4
**entered [2]** 12/23 34/23
**entering [3]** 10/24 12/18 16/16
**entirety [1]** 14/11
**entitled [1]** 54/4
**entity [1]** 6/5
**entry [2]** 2/19 51/23
**environment [1]** 43/5
**error [2]** 26/16 26/17
**escape [1]** 19/6
**especially [1]** 47/24
**Esquire [4]** 1/13 1/13 1/17 1/17
**essence [1]** 22/14
**essential [2]** 13/1 15/10
**essentially [3]** 6/5 38/16 39/10
**et [2]** 29/10 29/10
**evaluate [1]** 42/10
**evaluation [2]** 44/9 50/19
**even [8]** 6/25 9/9 15/23 21/13 34/13 43/19 43/19 46/25
**evening [1]** 11/25
**event [1]** 3/9
**events [3]** 15/24 16/9 16/10
**eventually [1]** 46/5
**ever [4]** 18/10 36/18 43/23 43/23
**every [1]** 27/25

**everything [2]** 43/9 51/7
**evidence [17]** 6/23 7/2 10/21 11/11 11/16 14/24 15/10 15/10 15/10 18/4 21/4 21/24 25/10 33/4 33/14 33/15 38/23
**evident [1]** 21/13
**evidentiary [1]** 9/13
**exactly [6]** 5/4 10/7 24/22 24/24 25/21 33/11
**exactly within [1]** 24/24
**example [1]** 25/1
**excellent [1]** 44/24
**except [1]** 41/23
**excuse [4]** 3/6 14/15 16/7 26/9
**executed [2]** 16/6 30/19
**exhibit [8]** 12/23 30/10 30/15 31/4 31/11 31/15 31/22 32/14
**exhibits [1]** 14/23
**existence [1]** 48/8
**experience [2]** 14/19 21/14
**experienced [3]** 14/16 17/2 21/11
**experts [1]** 14/24
**explored [1]** 12/3
**express [1]** 45/16
**extensive [3]** 9/6 24/17 30/1
**extent [2]** 36/14 47/12
**extra [2]** 35/3 40/23
**extrapolation [1]** 32/10
**extremely [1]** 39/4

# F

**F.2d [1]** 10/20
**F.3d [1]** 10/15
**face [2]** 8/9 9/8
**faced [1]** 17/18
**facilities [1]** 41/5
**facility [3]** 36/21 40/5 40/9
**fact [11]** 3/19 4/13 4/24 14/10 26/1 38/15 38/24 38/25 39/9 45/19 48/6
**factor [7]** 10/19 16/14 18/14 20/10 33/13 34/8 39/22
**factors [13]** 12/2 13/11 17/24 18/21 19/14 19/20 28/12 32/16 32/19 41/2 42/11 44/17 47/9
**facts [11]** 13/7 13/8 15/21 17/7 18/22 21/4 22/19 24/10 24/21 33/24 47/19
**factual [5]** 13/2 13/3 13/20 21/3 24/9
**fair [8]** 6/21 10/11 10/17 11/7 22/8 22/20 44/12 49/13
**fairly [3]** 11/6 49/13 49/14
**faithfully [2]** 23/16 24/18
**falls [1]** 32/23
**familiar [1]** 43/5
**family [19]** 36/1 36/4 36/7 36/12 36/16 39/20 39/24 40/4 40/5 40/8 40/22 40/25 43/12 45/5 45/17 46/23 47/9 50/3 52/10
**far [1]** 9/10
**fast [1]** 43/8
**fault [1]** 21/21
**favor [1]** 17/25
**favorable [1]** 9/9
**February [2]** 7/19 16/7
**February 5th [1]** 7/19
**federal [5]** 2/23 11/19 20/2 29/7 38/14
**feel [1]** 44/23

**felt [1]** 5/2
**few [1]** 38/25
**fight [1]** 21/12
**file [2]** 33/1 35/2
**filed [8]** 2/14 2/15 3/3 3/4 3/5 10/3 14/22 33/3
**files [4]** 4/4 4/7 8/1 15/18
**filing [2]** 3/14 4/17
**filings [1]** 43/16
**final [5]** 8/25 23/16 24/12 34/1 35/13
**finally [4]** 18/1 31/22 32/13 44/16
**find [1]** 26/16
**finding [2]** 15/1 38/2
**findings [2]** 9/12 52/19
**fine [5]** 8/4 27/2 38/1 50/12 50/13
**firearm [7]** 23/13 32/14 33/13 33/15 33/16 33/23 33/24
**firm [4]** 1/18 2/25 12/15 12/17
**first [9]** 6/2 8/11 10/13 10/14 15/23 16/18 23/5 30/9 45/18
**five [5]** 11/1 24/16 27/1 35/14 50/17
**flight [1]** 29/15
**floor [1]** 8/22
**flowed [2]** 29/8 32/11
**Flynn [10]** 2/25 11/23 12/14 12/18 12/19 14/15 17/3 17/5 17/6 21/10
**focus [1]** 7/13
**folks [1]** 43/10
**follow [1]** 41/5
**forced [1]** 12/12
**foregoes [1]** 22/9
**foregoing [1]** 54/2
**FOREMAN [2]** 1/13 2/4
**foresee [1]** 21/25
**foreseeable [1]** 29/5
**Forfeiture [3]** 34/23 35/22 50/24
**forget [2]** 40/1 43/18
**form [1]** 46/3
**fortunately [1]** 46/7
**forward [1]** 17/23
**found [12]** 5/17 6/10 6/23 10/15 13/24 15/11 23/13 30/24 31/1 32/14 33/17 41/19
**four [2]** 10/25 24/15
**four-level [1]** 24/15
**Fourth [4]** 6/7 6/9 10/16 10/18
**frivolous [1]** 14/1
**fulfilled [1]** 13/16
**fully [7]** 3/4 7/8 9/20 12/2 17/7 18/22 35/19
**further [5]** 5/1 25/12 29/18 29/21 51/15
**future [2]** 34/5 36/14

# G

**general [3]** 5/14 34/1 34/12
**generally [1]** 4/22
**George's [1]** 39/12
**get [11]** 17/18 22/7 27/22 35/25 39/7 42/17 44/16 45/10 45/13 46/1 51/24
**gist [1]** 14/11
**give [14]** 2/17 3/14 4/18 8/3 13/13 35/9 35/11 35/18 35/19 37/12 38/7 39/19 46/18 46/23
**given [3]** 19/19 39/20 42/7
**gives [1]** 49/20

**G**

**giving [2]** 38/10 51/20
**Glock [1]** 23/12
**go [11]** 4/23 9/10 10/4 12/22 20/2 20/6 23/4 25/23 26/8 35/23 47/7
**goals [1]** 52/8
**goes [5]** 5/23 17/16 17/24 22/14 36/17
**going [22]** 4/11 9/7 17/22 18/6 21/22 21/23 24/11 30/3 36/17 38/19 40/12 40/15 40/22 41/5 44/15 46/1 50/1 50/3 50/12 50/16 50/17 51/24
**good [9]** 18/19 43/25 44/1 44/1 47/1 47/3 49/24 50/10 52/9
**goodness [1]** 43/6
**got [9]** 3/6 11/8 12/5 15/23 16/22 18/4 25/4 43/8 49/15
**government [42]** 1/13 2/23 3/4 5/15 5/19 6/3 6/5 7/8 9/16 11/2 17/10 17/17 18/3 20/6 20/18 20/18 21/16 21/22 21/22 23/20 25/4 28/22 29/7 30/10 30/21 30/25 31/19 31/24 32/13 32/17 33/1 33/3 33/9 33/14 34/1 34/12 34/19 34/22 38/22 49/15 51/10 51/12
**government's [10]** 8/11 9/7 17/25 30/15 31/4 31/11 31/15 31/22 32/9 35/13
**grant [1]** 34/22
**granted [1]** 51/14
**granting [1]** 16/15
**grateful [1]** 9/25
**gravamen [1]** 13/23
**great [2]** 36/2 36/12
**greater [7]** 34/10 34/21 44/12 49/8 49/17 51/3 52/7
**greatest [1]** 20/16
**Greenbelt [3]** 1/6 1/15 8/21
**GRIMM [1]** 1/10
**grounds [1]** 3/18
**growth [2]** 46/16 50/8
**guess [1]** 13/2
**guidance [1]** 46/18
**guideline [1]** 20/22
**guidelines [22]** 13/11 19/3 19/16 19/20 20/1 20/9 20/15 20/19 23/5 23/14 24/14 26/14 26/21 26/25 27/1 27/4 27/10 32/24 44/5 49/4 49/6 49/10
**guilt [1]** 22/1
**guilty [23]** 2/16 3/3 3/8 3/10 6/13 6/18 9/15 10/12 12/17 13/1 13/13 13/14 13/15 13/23 13/24 15/11 16/21 18/12 18/23 21/20 26/24 27/25 44/4
**gun [2]** 22/10 22/12

**H**

**had [39]** 2/22 4/9 5/1 8/20 9/24 10/25 11/20 12/11 12/24 13/3 14/23 15/5 15/24 16/23 16/25 17/5 17/5 17/16 18/18 19/11 21/1 21/19 25/1 27/6 27/7 27/16 30/22 31/10 36/6 39/6 39/23 40/21 44/4 45/5 45/11 45/24 49/4 49/4 49/6
**happen [2]** 36/13 40/25
**happened [2]** 14/7 39/15
**happening [1]** 38/19
**happens [1]** 31/10
**happy [3]** 4/18 35/23 45/1

**hard [8]** 20/12 20/17 21/12 21/25 21/25 22/8 22/8 24/22
**HARRIS [48]** 1/6 2/3 2/9 2/15 2/20 2/24 3/4 4/9 4/10 8/7 11/13 12/14 12/20 13/4 14/14 14/14 15/11 15/24 16/1 16/13 17/8 17/20 19/8 21/9 21/18 24/15 24/23 25/1 25/15 25/25 27/16 28/10 29/18 36/18 36/23 37/6 37/16 39/14 40/24 41/5 41/13 41/18 42/23 43/17 51/17 51/19 52/9
**Harris' [5]** 6/1 12/4 19/15 29/14 29/22
**harsh [3]** 39/4 40/19 48/22
**harshest [1]** 40/19
**has [56]**
**have [110]**
**having [5]** 4/2 10/1 22/24 35/10 43/21
**he [59]**
**he's [9]** 12/5 15/23 36/16 39/17 39/18 39/19 46/13 46/14 46/20
**headset [1]** 27/22
**healthy [1]** 46/7
**hear [4]** 3/16 4/19 28/9 35/23
**heard [3]** 28/7 28/10 35/18
**hearing [7]** 2/6 2/13 13/5 17/2 30/1 31/4 36/6
**hearings [7]** 5/10 9/13 14/14 14/20 14/23 14/23 21/2
**heart [1]** 48/25
**heartily [1]** 49/13
**help [2]** 46/18 52/13
**her [2]** 2/25 12/17
**here [26]** 2/6 2/8 6/1 8/3 9/17 18/18 21/7 23/6 32/3 33/10 34/17 36/2 36/3 37/10 37/10 39/24 40/22 41/18 42/8 42/24 42/25 43/10 44/21 44/22 45/11 48/7
**heroin [3]** 34/14 38/23 47/22
**hey [1]** 6/13
**higher [5]** 20/21 20/21 20/22 22/5 25/8
**highly [2]** 14/15 21/16
**Hills [1]** 26/3
**him [12]** 3/1 12/12 12/15 17/1 21/21 25/4 32/22 36/5 36/7 36/16 39/25 41/15
**himself [2]** 8/16 36/23
**hired [1]** 14/24
**his [33]** 4/3 10/21 10/23 11/11 12/7 12/9 12/12 13/18 16/2 16/13 19/2 22/14 29/23 30/20 30/24 32/15 32/22 33/17 33/21 34/3 34/4 36/2 36/7 36/16 39/19 39/23 40/21 40/25 40/25 41/15 46/20 51/17
**history [15]** 25/7 25/20 25/23 25/25 26/1 26/18 26/19 26/20 32/20 32/22 33/11 39/12 44/20 47/10
**home [1]** 34/4
**Honor [68]**
**Honor's [1]** 38/2
**HONORABLE [1]** 1/10
**hop [1]** 37/4
**hope [1]** 52/9
**hopefully [1]** 34/9
**hopes [1]** 34/2
**horizon [1]** 45/15
**hotly [1]** 7/21
**house [1]** 29/17

**housed [1]** 3/24
**how [12]** 13/12 20/24 21/23 32/1 32/10 44/13 46/16 46/18 46/19 46/24 46/24 46/25
**However [4]** 4/23 5/1 11/8 38/14
**humility [2]** 46/20 46/21
**hundred [2]** 30/17 32/8
**hundreds [1]** 32/4

**I**

**I'll [9]** 4/19 4/19 7/24 8/25 28/9 28/11 31/16 31/23 35/7
**I'm [15]** 4/18 7/11 9/25 15/19 18/6 25/11 35/9 35/23 42/19 49/1 49/23 50/3 50/12 50/17 51/24
**I've [9]** 3/6 11/8 18/18 37/13 41/4 43/1 48/11 49/11 49/11
**ICE [1]** 2/5
**identified [1]** 3/20
**idly [1]** 39/17
**IDs [1]** 31/5
**if [47]** 4/16 4/16 5/18 6/15 6/20 6/25 7/1 8/3 9/9 10/14 13/9 13/23 14/11 15/19 17/13 17/18 17/22 17/24 18/3 18/11 19/21 20/2 21/2 21/24 22/1 22/3 25/10 26/11 28/7 28/8 28/10 30/17 35/6 35/11 37/6 37/25 40/22 40/24 42/1 42/3 42/17 46/25 47/20 47/20 48/23 51/21 51/25
**ignore [1]** 38/15
**Il [1]** 26/19
**illegal [1]** 6/8
**imagine [1]** 45/23
**immediately [1]** 16/21
**immigration [1]** 50/20
**impact [1]** 47/23
**implications [1]** 29/10
**importance [1]** 40/8
**important [6]** 12/7 33/25 36/7 36/7 36/16 44/17
**impose [5]** 43/22 49/3 49/18 50/12 50/17
**imposed [1]** 26/11
**imposes [1]** 6/20
**impossible [1]** 8/9
**imprisonment [1]** 25/8
**impropriety [1]** 20/15
**IMS [1]** 45/14
**in [198]**
**inability [1]** 7/1
**incarcerated [1]** 50/11
**incarceration [2]** 34/3 50/20
**include [2]** 23/23 28/1
**including [3]** 21/10 21/10 28/20
**inconsistent [1]** 22/1
**inconvenience [4]** 11/3 17/17 18/1 18/14
**increase [3]** 22/6 24/1 24/6
**increased [3]** 19/15 26/5 26/22
**independent [1]** 15/8
**independently [1]** 22/20
**indicated [1]** 40/18
**indicia [1]** 33/21
**indicted [1]** 9/2
**Indictment [5]** 9/3 9/6 26/8 51/11 51/12
**individual [8]** 6/8 9/1 15/21 42/9 44/18 45/2 45/19 48/2

**I**

**individually [2]** 48/8 48/16
**individuals [2]** 29/11 31/13
**indulgence [1]** 37/22
**inference [1]** 42/3
**influence [2]** 12/6 26/3
**information [11]** 2/17 4/8 4/10 4/10 8/13 8/15 15/18 15/25 15/25 16/4 22/21
**initially [1]** 19/4
**innocence [8]** 6/22 7/1 10/23 11/7 13/19 13/20 13/20 16/14
**innocent [1]** 13/21
**inquired [2]** 12/11 12/20
**inquiry [2]** 2/19 11/18
**inspector [2]** 5/24 8/22
**instance [2]** 20/25 24/13
**instead [1]** 42/20
**insufficient [1]** 19/19
**insufficiently [2]** 19/18 19/19
**intelligent [3]** 39/23 41/20 44/25
**intend [1]** 3/16
**intent [1]** 9/4
**intents [1]** 40/21
**intercepted [1]** 30/12
**interesting [1]** 13/19
**interfere [2]** 12/6 12/9
**interviewed [1]** 8/8
**into [11]** 7/24 12/23 14/3 17/13 18/25 22/14 41/1 47/9 48/11 49/10 49/11
**invested [1]** 5/13
**investigate [2]** 5/1 17/6
**investigative [1]** 4/4
**involved [8]** 4/2 5/20 21/7 24/16 32/2 33/6 48/14 48/15
**involvement [1]** 5/15
**involves [1]** 44/9
**is [206]**
**issue [4]** 3/11 15/14 17/24 33/6
**issues [1]** 5/10
**it [155]**
**it's [38]** 6/25 7/25 8/9 8/14 9/3 9/6 9/6 9/14 9/20 10/9 11/6 13/19 13/25 14/19 15/21 18/10 18/15 20/2 21/25 24/8 24/24 29/1 30/10 30/13 31/4 34/14 34/18 35/6 35/11 37/20 38/3 42/2 42/23 43/5 45/21 47/6 47/13 51/25
**italicized [2]** 23/17 24/18
**its [4]** 2/18 8/15 9/17 48/7
**itself [5]** 3/8 4/15 10/13 16/18 47/5

**J**

**jail [3]** 3/24 39/6 40/24
**Jamaica [1]** 44/22
**James [1]** 2/5
**Jermaine [2]** 15/20 15/22
**Jersey [1]** 33/5
**job [4]** 19/24 20/1 44/1 45/13
**jobs [1]** 46/1
**Jordan [1]** 37/4
**judge [7]** 1/11 11/7 43/1 43/10 43/21 43/23 44/11
**judgment [3]** 16/24 32/9 51/24
**judicial [3]** 11/4 18/2 18/17
**July [3]** 2/20 9/7 16/18

**July 22nd [2]** 2/20 16/18
**jury [3]** 18/4 18/6 18/14
**just [29]** 4/22 5/17 6/12 6/14 6/17 6/21 8/2 10/11 10/18 11/7 14/6 18/18 19/4 23/2 30/17 30/22 31/16 34/25 35/3 35/9 35/11 35/25 38/1 38/7 41/13 41/24 42/8 46/12 52/6
**justified [1]** 32/21
**JUSTIN [1]** 1/17

**K**

**key [1]** 15/10 15/17 16/6
**killed [1]** 34/17
**kilograms [2]** 23/9 23/9
**kilos [2]** 28/24 28/25
**kind [4]** 10/4 46/1 47/6 50/5
**knew [1]** 6/4
**know [14]** 13/25 17/15 22/21 25/20 35/17 36/4 36/6 36/24 39/24 42/23 43/4 43/14 45/8 45/13
**knowing [5]** 10/22 11/12 11/17 12/3 45/6
**knowledge [3]** 20/24 21/17 22/19
**known [1]** 15/6

**L**

**lack [1]** 32/20
**Lane [1]** 1/14
**language [1]** 6/16
**large [4]** 30/16 48/3 48/12 48/13
**last [4]** 7/10 9/19 18/13 21/13
**later [1]** 5/25
**launder [1]** 9/5
**laundering [1]** 4/12
**law [19]** 1/18 6/15 6/22 8/8 9/12 10/5 11/8 11/14 26/22 30/12 37/18 38/13 38/14 43/10 47/25 49/1 49/11 49/18 49/19
**lawyer [1]** 12/15
**lawyers [14]** 2/25 14/8 14/18 21/6 21/7 21/8 21/12 21/14 22/18 27/17 43/4 44/1 49/14 49/24
**lay [1]** 17/15
**leader [1]** 24/16
**leads [1]** 46/6
**league [1]** 38/24
**least [5]** 10/14 13/25 28/19 39/1 49/3
**leave [1]** 27/5
**leaves [1]** 25/14
**led [4]** 14/25 15/3 15/4 16/10
**ledger [2]** 31/12 31/23
**ledgers [1]** 31/15
**left [1]** 45/9
**legal [6]** 10/23 13/19 13/19 16/14 45/12 48/3
**legalization [1]** 39/1
**legalized [2]** 47/15 47/15
**legally [2]** 13/21 13/24
**legitimate [1]** 39/24
**lens [1]** 19/25
**Leo [1]** 31/18
**LEONALDO [5]** 1/6 2/3 4/10 16/1 43/17
**Leslie [1]** 36/3
**less [2]** 23/9 36/13

**lesser [2]** 48/24 49/19
**let [7]** 2/17 14/6 19/4 23/4 24/5 34/24 41/15
**let's [4]** 10/2 10/4 11/10 44/20
**letter [22]** 12/22 13/16 36/19 36/22 37/5 37/20 39/16 41/14 41/15 42/4 42/12 42/13 44/21 45/13 45/16 45/25 46/11 46/12 46/12 48/23 50/8 51/20
**letters [1]** 37/16
**level [23]** 19/15 20/20 20/20 20/21 20/21 22/4 23/6 23/12 23/21 23/23 23/24 24/1 24/6 24/15 25/5 25/6 25/6 25/14 25/17 25/19 26/20 38/2 44/7
**levels [2]** 22/5 24/4
**life [2]** 40/22 46/20
**light [1]** 9/9
**like [10]** 22/10 30/18 37/6 43/11 44/6 44/8 44/11 46/4 46/6 47/22
**likely [3]** 34/3 35/2 36/13
**limine [1]** 33/3
**limited [1]** 13/15
**limits [1]** 45/14
**Lincoln [1]** 36/2
**LINDA [3]** 1/23 54/2 54/8
**line [1]** 31/25
**listen [1]** 35/19
**listener [1]** 41/20
**litigated [1]** 7/21
**little [2]** 25/25 27/12
**local [2]** 6/10 8/21
**location [1]** 8/20
**long [4]** 7/20 17/18 39/6 39/18
**look [8]** 6/10 10/4 15/13 19/24 26/11 37/1 37/7 45/25
**looked [2]** 4/4 36/25
**lot [4]** 5/12 17/12 47/19 48/13
**loud [1]** 46/11
**lower [3]** 20/20 38/3 38/5
**luck [1]** 52/9

**M**

**ma'am [1]** 37/21
**made [11]** 8/15 13/21 14/4 14/5 16/21 25/2 33/22 42/12 43/25 46/16 47/14
**maintained [2]** 24/2 39/19
**maintaining [1]** 40/8
**majority [1]** 38/25
**make [24]** 8/25 12/7 12/8 14/6 21/15 24/24 26/14 27/22 28/8 37/13 37/13 41/3 41/8 41/25 42/7 42/8 42/10 42/11 43/9 46/4 46/9 46/17 47/8 48/2
**makes [3]** 4/2 45/1 49/20
**making [5]** 6/6 12/10 22/18 44/1 46/2
**man [2]** 44/25 46/20
**mandatory [3]** 26/23 39/4 50/14
**manifestly [1]** 48/15
**manufacturing [1]** 24/3
**many [8]** 14/18 14/20 16/9 16/9 36/5 38/17 39/19 41/19
**March [4]** 1/7 2/14 3/6 26/2
**March 10 [1]** 26/2
**March 23rd [1]** 2/14
**marijuana [32]** 4/11 5/25 9/5 16/1 23/9 28/17 28/23 28/25 29/3 29/6 29/21 29/22 30/16 31/13 33/7 33/7 33/20

**M**

marijuana... **[15]** 33/21 34/14 34/16 38/14 38/16 38/17 38/18 38/18 38/22 39/1 47/13 47/19 47/21 48/1 48/12
Mark **[3]** 31/6 31/7 31/7
marks **[1]** 42/12
Marlboro **[1]** 1/19
MARSHALL **[3]** 1/23 54/2 54/8
marshals **[1]** 43/5
MARYLAND **[11]** 1/1 1/6 1/15 1/19 8/22 14/18 15/3 29/12 29/20 38/16 39/7
materials **[1]** 31/8
math **[1]** 44/15
matter **[4]** 2/12 23/1 48/7 54/4
may **[13]** 4/20 6/17 8/8 8/8 11/8 16/7 20/5 30/22 34/24 37/25 38/25 44/22 52/14
Maybe **[2]** 15/21 18/2
McGregor **[7]** 4/8 8/8 15/19 15/19 15/20 29/14 30/23
me **[39]** 2/17 3/6 8/3 14/6 14/15 15/14 15/15 15/15 16/7 16/12 16/14 18/22 19/4 23/4 24/5 26/9 34/24 35/9 35/11 35/12 35/19 37/12 38/7 38/10 40/11 41/24 43/1 44/6 45/1 46/11 48/10 48/23 49/2 49/12 49/20 49/20 50/8 50/9 52/18
mean **[1]** 44/19
means **[1]** 45/17
Mebane **[7]** 19/5 19/23 22/13 23/16 24/18 38/1 52/18
medical **[3]** 12/9 38/18 48/2
meet **[1]** 48/21
meeting **[1]** 4/2
members **[2]** 36/4 45/6
memorandum **[1]** 40/19
memories **[1]** 17/16
memory **[2]** 7/11 30/17
mentioned **[1]** 16/17
merits **[1]** 21/3
message **[1]** 34/13
met **[2]** 9/16 46/15
methamphetamines **[1]** 47/23
might **[6]** 6/8 12/9 29/3 32/22 33/11 33/11
militates **[1]** 16/14
Mill **[1]** 1/18
millimeter **[1]** 23/12
million **[5]** 27/2 32/5 32/6 32/9 38/3
mind **[3]** 4/16 18/14 22/16
minimum **[3]** 26/23 39/4 46/2
minister **[2]** 36/20 46/14
minus **[2]** 31/17 44/7
minute **[1]** 21/13
MIRRIAM **[1]** 1/17
misdemeanor **[1]** 39/10
miss **[1]** 23/18
mistake **[1]** 16/21
MITCHELL **[18]** 1/13 2/4 3/16 4/19 7/7 10/10 13/3 16/5 21/16 28/4 31/6 31/7 31/7 35/4 47/12 47/18 50/25 51/8
mitigates **[1]** 36/14
mitigating **[3]** 32/16 32/19 33/13
Model **[1]** 23/12
modify **[1]** 52/18

moment **[1]** 42/8
money **[12]** 4/12 9/5 29/1 29/8 32/1 32/8 32/11 33/20 45/11 45/22 46/4 48/14
month **[3]** 16/19 25/7 46/15
months **[13]** 14/21 25/9 26/5 26/11 26/12 28/13 32/18 32/23 34/20 46/15 48/24 49/3 51/4
Moore **[1]** 10/20 18/22
more **[12]** 21/1 23/8 24/17 26/6 35/11 38/21 40/5 43/21 43/22 44/6 44/8 45/10
morning **[1]** 36/25
most **[3]** 9/9 14/17 44/16
motion **[21]** 2/15 2/16 3/2 3/5 3/7 3/7 3/10 3/16 3/17 3/20 4/14 4/17 5/22 10/2 13/22 14/22 16/15 16/18 18/23 33/3 34/23
motions **[4]** 1/10 2/19 30/1 51/14
MOTIONS/SENTENCING **[1]** 1/10
move **[2]** 18/25 47/2
moved **[2]** 11/6 11/8
moving **[4]** 10/11 10/24 16/17 29/11
Mr **[89]**
Mr. **[20]** 3/16 4/19 7/7 10/10 13/3 16/5 19/23 21/16 22/13 23/16 24/18 28/4 29/14 35/4 38/1 47/12 47/18 50/25 51/8 52/18
Mr. McGregor **[1]** 29/14
Mr. Mebane **[6]** 19/23 22/13 23/16 24/18 38/1 52/18
Mr. Mitchell **[13]** 3/16 4/19 7/7 10/10 13/3 16/5 21/16 28/4 35/4 47/12 47/18 50/25 51/8
Ms **[22]** 2/8 2/25 3/3 9/24 11/22 11/23 12/14 12/18 12/19 14/5 14/15 14/16 17/3 17/3 17/5 17/6 21/10 21/10 27/13 27/22 29/23 51/1
much **[9]** 11/8 11/14 20/24 28/14 32/1 32/11 36/13 42/19 52/17
multiple **[1]** 5/12
must **[6]** 18/23 26/22 48/19 49/3 49/18 51/23
my **[23]** 9/25 12/22 13/23 14/2 14/6 15/9 15/16 16/24 18/14 18/23 19/10 21/20 22/16 25/12 27/3 27/9 30/17 33/25 35/2 36/1 38/4 47/9 51/22
myself **[6]** 21/6 23/1 35/12 43/8 49/12 52/2

**N**

name **[2]** 3/23 43/17
named **[1]** 9/13
names **[2]** 31/8 43/18
naming **[1]** 31/17
national **[1]** 29/2
nature **[3]** 4/25 47/11 48/11
near **[2]** 31/17 38/24
nearly **[1]** 49/21
necessarily **[1]** 50/4
necessary **[7]** 34/10 34/21 44/13 49/9 49/17 51/4 52/7
Neck **[1]** 7/20
need **[7]** 7/11 8/3 8/4 17/23 49/10 51/8 51/16
needed **[1]** 5/2
needs **[2]** 26/25 34/13

negotiate **[4]** 20/13 20/15 22/8 23/20
negotiated **[2]** 49/13 49/14
negotiation **[2]** 24/22 28/14
never **[3]** 4/14 18/14 43/23
new **[3]** 3/19 31/17 33/5
newly **[1]** 6/23
next **[3]** 16/23 23/25 51/25
Nick **[1]** 2/4
NICOLAS **[1]** 1/13
night **[1]** 7/10
nine **[1]** 28/19
no **[32]** 1/4 5/4 5/4 5/5 8/6 8/13 12/6 12/9 19/23 20/1 20/15 22/1 22/3 22/12 23/17 24/7 26/16 26/16 27/7 29/4 32/6 33/14 38/23 43/22 44/12 47/25 49/7 49/18 49/19 49/25 50/24 51/18
nolo **[1]** 6/18
non **[1]** 6/5
non-government **[1]** 6/5
none **[1]** 28/6
nope **[1]** 21/23
nor **[1]** 18/16
Northern **[1]** 7/20
not **[107]**
note **[4]** 7/18 17/20 32/25 49/21
notebook **[1]** 31/12
notebooks **[1]** 31/10
noted **[3]** 9/2 28/15 39/23
notes **[4]** 1/24 16/2 16/3 26/14
nothing **[2]** 43/21 48/10
Notice **[2]** 51/23 52/4
notion **[1]** 10/17
now **[24]** 2/17 6/2 10/9 10/9 10/18 15/13 17/11 18/25 20/5 20/6 21/10 22/23 23/4 25/23 27/11 27/20 32/16 35/7 38/3 41/23 46/5 47/11 49/4 52/13
number **[23]** 2/3 2/14 3/22 9/3 10/20 10/22 10/23 10/25 11/1 11/2 11/10 14/21 19/14 26/19 28/18 30/15 30/16 31/4 31/11 31/15 31/22 32/14 34/16
numbers **[1]** 3/6
Numeral **[1]** 26/19
numerous **[2]** 30/20 31/1

**O**

objection **[2]** 25/19 25/19
objections **[4]** 19/1 27/5 27/7 41/6
obligated **[1]** 14/1
obligation **[1]** 9/24
obtain **[1]** 45/24
Obviously **[1]** 5/13
occasion **[1]** 33/3
occasions **[1]** 33/2
occurred **[1]** 8/10
October **[3]** 3/9 7/20 16/8
October 19 **[1]** 3/9
October 7th **[1]** 7/20
off **[2]** 5/8 44/4
offense **[29]** 13/1 19/15 19/15 20/20 20/20 20/21 20/21 22/4 23/6 23/21 23/24 24/12 25/5 25/6 25/6 25/14 25/17 26/7 26/20 28/16 29/4 33/9 38/2 44/19 47/5 47/5 47/11 48/4 48/12
offenses **[1]** 39/8
offer **[1]** 12/24

# O

**Office [1]** 1/14
**OFFICIAL [2]** 1/23 54/8
**offloaded [1]** 8/20
**often [1]** 20/16
**Oh [1]** 52/16
**Okay [4]** 27/9 37/14 42/22 51/14
**old [2]** 1/18 17/11
**on [50]** 2/4 2/8 2/14 2/20 3/2 3/3 3/5 3/6 3/9 3/17 4/1 4/14 4/23 5/10 7/13 7/20 8/9 9/8 10/10 10/6 16/12 16/18 16/19 21/3 21/20 22/21 24/7 25/19 26/4 29/15 30/3 30/13 30/21 33/1 33/12 35/18 37/4 38/2 39/12 40/7 40/20 41/6 41/14 42/12 45/13 47/2 48/6 50/5 50/16 52/15
**one [40]** 3/19 4/7 7/25 10/20 11/10 11/10 14/17 15/17 16/20 20/1 21/21 23/17 24/11 24/12 24/25 25/25 26/5 26/17 31/3 31/6 31/7 31/11 31/16 31/23 32/19 35/19 37/6 37/6 37/16 39/9 41/2 41/22 42/25 44/3 44/7 45/23 49/19 49/20 51/11 52/14
**only [4]** 4/24 12/1 26/1 45/23
**open [2]** 8/16 28/3
**opened [2]** 5/24 8/23
**opening [1]** 15/1
**operation [1]** 32/2
**operational [1]** 27/23
**opinions [1]** 21/7
**opportunity [5]** 3/15 4/18 18/16 22/9 46/9
**opposed [2]** 6/7 11/7
**opposition [1]** 3/20
**or [55]**
**order [4]** 3/11 35/22 41/4 50/24
**organizer [1]** 24/16
**original [2]** 3/20 51/12
**originally [2]** 10/3 12/13
**other [19]** 12/9 15/21 17/24 22/10 22/13 29/7 30/11 30/12 31/15 33/21 38/20 38/22 41/3 42/1 42/25 45/7 45/21 46/4 51/16
**others [1]** 50/10
**otherwise [6]** 6/8 18/12 22/5 23/21 24/17 42/18
**our [13]** 4/25 5/2 6/23 28/18 35/10 36/3 36/11 38/21 38/22 40/18 42/24 43/8 52/12
**out [22]** 3/18 4/11 5/18 5/25 10/19 16/4 17/15 23/16 27/5 34/3 37/8 37/9 37/10 45/10 46/11 46/17 46/21 46/23 47/2 47/8 47/18 52/10
**outcome [2]** 21/25 22/1
**outline [1]** 12/2
**outside [1]** 12/16
**over [10]** 10/18 14/20 17/5 28/18 32/22 39/14 43/15 46/22 49/5 50/20
**over-represent [1]** 32/22
**over-represents [1]** 39/14
**overdoses [1]** 47/22
**overhead [1]** 30/3
**overly [1]** 48/22
**overrule [1]** 13/22
**overwhelming [1]** 49/5

**own [1]** 39/23

# P

**P-R-O-C-E-E-D-I-N-G-S [1]** 2/1
**packaging [2]** 28/20 29/19
**page [7]** 3/22 4/6 4/6 24/7 25/24 31/16 31/23
**paid [2]** 45/3 50/14
**painstaking [1]** 14/25
**pallet [4]** 5/24 8/17 8/19 15/1
**pallets [5]** 8/23 28/21 30/10 30/11 30/13
**paper [4]** 30/20 31/1 43/15 43/15
**papers [2]** 19/2 45/14
**paperwork [1]** 36/11
**par [1]** 39/13
**paragraph [11]** 4/1 4/6 7/23 7/24 8/7 15/17 15/17 16/3 23/10 25/24 26/6
**parse [1]** 8/3
**part [4]** 4/13 11/20 19/16 19/17
**participants [1]** 24/17
**participate [1]** 18/16
**participated [1]** 15/7
**particular [7]** 20/9 20/25 24/13 31/12 31/16 31/23 33/9
**particularly [1]** 45/17
**parties [1]** 41/7
**party [2]** 10/11 15/8
**path [1]** 46/5
**patient [3]** 44/4 45/4 45/5
**PAUL [4]** 1/10 4/9 8/7 15/24
**Pause [2]** 35/1 37/24 38/8 42/15
**pay [3]** 41/20 50/13 50/22
**penalties [1]** 40/19
**penalty [2]** 13/7 40/20
**pending [1]** 3/24
**Pennsylvania [3]** 5/24 8/19 15/2
**people [6]** 34/17 39/7 43/7 43/18 46/19 50/6
**perhaps [1]** 29/2
**period [3]** 14/21 19/18 19/19 25/7 32/12 34/2 35/14 50/17
**perjury [1]** 13/7
**permanent [1]** 45/11
**permission [1]** 45/14
**person [13]** 3/23 15/23 16/20 21/24 33/18 39/14 39/16 42/9 43/2 44/11 46/7 47/6 52/10
**personal [2]** 43/21 47/16
**personalize [1]** 43/19
**personally [1]** 42/9
**persons [3]** 36/12 39/11 39/19
**ph [1]** 37/5
**photographs [2]** 29/24 31/5
**physical [2]** 45/7 48/9
**physiological [1]** 47/23
**pictures [1]** 48/13
**place [11]** 7/20 10/10 11/21 14/20 16/8 26/7 26/8 26/14 40/22 50/1 50/16
**placement [1]** 40/2
**places [1]** 34/16
**plain [1]** 6/15
**plea [60]**
**plead [2]** 18/6 18/12
**pleaded [3]** 13/23 20/14 26/24
**pleading [4]** 12/25 13/13 13/14 13/15

**pleadings [3]** 4/23 4/25 34/4
**pleads [1]** 16/21
**please [4]** 2/11 4/21 40/3 40/17
**pleasure [2]** 35/10 39/21
**pled [1]** 29/13
**plus [2]** 26/18 31/17
**point [20]** 6/1 6/11 8/6 8/12 8/13 8/25 10/7 11/23 12/4 18/8 21/24 26/1 26/1 26/2 26/5 26/18 31/16 31/23 33/25 34/1
**pointed [3]** 16/4 23/16 34/3
**points [10]** 4/23 23/15 25/15 26/6 26/18 26/19 39/10 43/25 44/1 47/18
**police [2]** 6/10 15/3
**policy [3]** 20/9 20/19 27/25
**poor [1]** 22/12
**portion [2]** 18/19 27/21
**pose [1]** 48/8
**position [1]** 24/24
**possess [1]** 9/4
**possession [3]** 5/2 33/23 38/17
**possible [2]** 22/6 50/3
**potential [2]** 47/2 47/7
**pounds [1]** 28/20
**pre [2]** 17/21 30/1
**pre-trial [2]** 17/21 30/1
**predated [1]** 8/14
**prejudice [5]** 11/2 17/10 17/17 17/22 17/23
**preliminary [2]** 2/12 23/1
**premise [1]** 24/2
**prepared [2]** 3/11 11/21 19/5
**presentation [1]** 28/8
**Presentence [11]** 19/1 19/4 19/11 19/25 22/25 23/5 23/10 25/24 26/6 27/13 27/17
**presently [1]** 15/15
**pretrial [1]** 21/2
**pretty [3]** 5/22 11/14 21/25
**previous [1]** 30/11
**previously [2]** 3/20 13/3
**pride [1]** 45/16
**Prince [1]** 39/12
**print [3]** 37/8 37/9 37/10
**printer [1]** 37/10
**prior [3]** 4/14 31/8 33/5
**prison [2]** 39/5 46/13
**private [1]** 6/8
**privilege [1]** 18/15
**privileges [1]** 50/7
**probably [5]** 5/9 11/5 24/21 27/11 42/24
**probation [14]** 19/5 19/12 19/20 19/24 23/11 23/15 23/25 24/13 26/5 26/11 26/15 50/14 50/18 50/23
**probationary [1]** 26/13
**problem [4]** 21/19 34/14 34/15 34/18
**problematic [1]** 33/22
**Procedure [4]** 2/24 10/8 11/19 20/3
**proceed [2]** 3/13 4/20 20/4
**proceeding [3]** 11/21 28/1 51/16
**proceedings [5]** 1/10 17/6 17/18 50/21 54/3
**produce [2]** 18/4 26/21
**produced [1]** 34/16
**productive [1]** 46/10
**proffer [2]** 7/19 16/8

**P**

**program [2]** 50/4 50/6
**programs [2]** 40/10 50/9
**progress [1]** 47/14
**prohibited [1]** 33/18
**project [1]** 46/3
**promote [1]** 48/19
**proof [1]** 5/17
**properly [1]** 18/11
**proposition [1]** 9/10
**protected [1]** 44/14
**proven [1]** 13/9
**provided [6]** 4/9 10/21 11/11 13/3 13/4 15/25
**provision [2]** 20/9 23/19
**provisionally [3]** 2/21 22/23 22/24
**proximity [1]** 40/8
**PSR [9]** 22/14 38/2 39/23 41/4 41/5 41/7 41/8 52/15 52/18
**public [5]** 42/20 44/14 44/19 44/23 47/13
**punishment [1]** 40/23
**purports [3]** 3/21 3/22 16/2
**purpose [1]** 24/2
**purposes [1]** 40/21
**pursuant [2]** 19/8 33/3
**pushed [1]** 5/8
**put [1]** 30/3
**PWG [2]** 1/5 2/3
**PWG-13-202 [1]** 2/3

**Q**

**quarrel [3]** 5/5 5/5 19/23
**question [4]** 14/3 14/4 15/16 22/16
**questions [1]** 13/7
**quick [1]** 4/23
**quite [3]** 25/11 36/10 39/18
**quote [4]** 4/1 4/7 4/12 10/11
**quoting [1]** 20/5

**R**

**raised [2]** 6/2 19/2
**raises [1]** 15/14
**raising [1]** 6/2
**ran [1]** 45/10
**range [7]** 20/8 26/21 27/4 27/10 28/20 32/24 38/1
**rather [2]** 15/8 17/11
**Ravenell [6]** 6/2 14/13 14/17 16/25 17/5 21/10
**RDAP [3]** 40/14 40/16 50/3
**RDB [1]** 9/3
**RDB-14-186 [1]** 9/3
**re [2]** 2/15 8/4
**re-read [1]** 8/4
**Re-submit [1]** 2/15
**reach [1]** 17/23
**reached [2]** 2/22 23/23
**read [12]** 7/24 8/2 8/4 13/5 16/2 37/12 37/13 38/7 38/10 38/10 41/24 41/24
**reader [1]** 46/25
**reading [1]** 6/24
**reality [1]** 5/7
**realize [1]** 46/5

**really [4]** 21/18 44/10 44/14 44/16
**reason [10]** 6/19 6/21 10/11 10/18 11/7 19/14 19/17 25/1 30/13 51/2
**reasonable [1]** 13/9
**reasonableness [1]** 6/7
**reasons [3]** 23/2 34/19 43/25
**recall [1]** 30/22
**receive [2]** 36/19 37/6
**received [3]** 4/24 26/4 31/13
**recess [2]** 52/13 52/24
**recognition [1]** 38/21
**recognize [3]** 3/13 36/1 39/4
**recognized [1]** 48/17
**recognizes [1]** 10/19
**recognizing [1]** 36/8
**recommend [3]** 40/11 50/1 50/3
**recommendation [7]** 21/15 22/18 27/1 40/2 40/9 40/13 40/16
**recommendations [1]** 21/8
**recommended [3]** 19/13 20/22 50/18
**recommends [1]** 19/6
**record [10]** 5/14 7/25 8/18 9/23 14/6 16/12 25/5 41/14 52/15 54/3
**reduced [1]** 25/4
**reductions [1]** 49/25
**refer [1]** 41/24
**reference [2]** 37/13 42/11
**references [1]** 4/2
**referred [3]** 7/23 15/20 22/13
**refers [1]** 16/8
**reflect [2]** 25/5 26/25
**reflected [1]** 52/20
**regard [4]** 4/17 19/1 33/13 38/15
**regarding [1]** 14/4
**rehabilitation [1]** 47/8
**related [2]** 31/8 33/4
**relationships [1]** 40/9
**release [3]** 27/2 35/14 50/16
**relevant [2]** 32/12 33/9
**remain [2]** 41/23 42/1
**remembers [1]** 5/9
**reminding [1]** 52/18
**removal [1]** 40/20
**removed [1]** 40/23
**repeat [1]** 8/3
**report [12]** 7/19 19/2 19/5 19/11 19/25 22/25 23/5 23/10 25/24 26/6 27/13 27/17
**reporter [4]** 1/23 43/7 54/1 54/8
**reporting [1]** 29/8
**represent [1]** 32/22
**represented [6]** 2/24 3/1 14/8 14/14 21/9 33/11
**represents [1]** 39/14
**request [5]** 34/22 35/13 50/25 52/15 52/18
**require [4]** 23/15 42/17 44/12 50/19
**required [4]** 12/1 13/17 19/2 19/25
**requires [1]** 24/25
**rescheduled [1]** 17/5
**residence [8]** 6/1 29/22 30/20 30/20 30/24 31/2 32/15 33/22
**resolve [1]** 19/3
**resources [3]** 11/4 18/2 18/17
**respect [8]** 2/18 21/8 22/18 34/12 42/10

42/17 48/19 48/20
**respects [1]** 38/17
**responsibility [3]** 22/3 22/4 25/16
**rest [1]** 4/22
**restitution [1]** 50/25
**result [3]** 15/9 17/18 29/9
**resulted [1]** 24/23
**results [1]** 25/16
**retained [3]** 3/1 11/23 14/9
**return [3]** 12/19 34/6 46/8
**returned [1]** 30/22
**reverse [1]** 7/19
**review [1]** 6/17
**reviewed [9]** 2/21 4/7 7/10 8/1 11/25 15/18 19/11 22/24 27/13
**revised [1]** 38/4
**Richard [2]** 3/23 9/1
**right [28]** 2/7 5/4 5/16 8/23 9/22 10/17 20/11 20/14 24/6 24/9 27/19 35/6 35/17 37/20 38/6 38/9 41/12 41/22 41/23 42/2 42/5 42/23 47/12 50/25 51/2 51/19 52/2 52/21
**rights [3]** 13/13 51/17 51/21
**Road [1]** 1/18
**role [1]** 24/12
**Roman [1]** 26/19
**routes [1]** 4/12
**RPR [1]** 54/8
**rule [23]** 2/19 2/23 3/17 4/19 6/13 6/14 6/16 6/17 6/24 10/8 10/8 10/10 10/13 11/18 11/21 12/2 12/20 13/17 19/7 20/2 20/12 23/20 33/4
**ruled [3]** 4/14 15/5 15/11
**Rules [1]** 11/19
**ruling [3]** 15/9 15/9 15/16
**rulings [1]** 14/4
**run [1]** 8/21

**S**

**S-A-F-F-O-R-D [1]** 40/6
**safe [2]** 14/19 19/12
**Safford [2]** 40/5 50/2
**said [12]** 3/14 3/15 13/6 13/8 24/18 33/20 42/4 42/12 44/21 45/12 49/2 51/4
**sale [2]** 47/16 48/3
**same [4]** 15/20 15/22 38/22 38/24
**sat [1]** 39/17
**satisfied [2]** 12/1 13/16
**saw [1]** 31/8
**say [13]** 6/10 6/14 14/19 15/17 16/4 16/5 19/4 19/12 25/1 42/3 43/16 45/25 52/16
**saying [1]** 21/23
**says [9]** 7/25 10/10 16/21 18/6 20/3 30/25 31/6 45/14 46/19
**scale [2]** 48/3 48/6
**scheduled [1]** 12/13
**school [2]** 45/9 46/25
**scope [2]** 13/15 24/25
**sealed [1]** 27/21
**search [15]** 5/15 6/3 6/6 6/6 7/21 8/10 8/11 8/15 9/11 14/4 15/4 15/6 15/7 21/20 30/19
**seated [1]** 2/11
**second [8]** 2/25 8/13 9/3 33/2 35/18 35/19 37/12 38/7

## S

**Secondly [2]** 13/18 21/6
**Section [5]** 23/7 23/14 24/1 24/14 25/16 51/21
**SEDDIQ [12]** 1/17 1/18 2/8 3/3 9/24 11/22 14/16 17/3 21/10 27/13 27/22 51/21
**see [8]** 31/25 34/25 35/2 36/18 39/16 47/20 47/21 47/22
**seems [3]** 6/15 44/6 44/8
**seen [4]** 29/25 30/6 30/9 31/3
**seized [8]** 6/1 30/11 30/16 30/24 31/10 32/5 32/7 32/7
**seizure [4]** 14/4 15/4 33/4 33/6
**selling [1]** 39/23
**senior [1]** 12/15
**sent [4]** 5/25 34/13 37/16 50/9
**sentence [35]** 6/20 20/7 20/22 22/6 22/21 23/17 26/4 26/13 26/23 28/13 28/14 32/18 34/9 34/20 39/5 41/2 43/22 44/9 44/11 44/12 46/8 46/22 47/2 48/19 48/19 48/24 49/3 49/16 49/17 49/18 49/23 51/3 51/22 52/3 52/6
**sentenced [1]** 49/7
**sentencing [17]** 1/10 2/6 2/13 3/13 5/8 13/12 18/25 19/11 19/14 20/7 20/9 20/10 27/21 28/1 28/8 31/4 36/10
**sentiment [2]** 29/2 29/3
**September [4]** 3/2 16/19 26/9 26/9
**September 12 [1]** 26/9
**September 3rd [1]** 3/2
**serious [5]** 28/16 34/18 34/18 48/4 48/14
**seriousness [2]** 29/4 48/12
**served [1]** 39/6
**serving [1]** 34/2
**session [1]** 16/8
**sessions [1]** 36/6
**set [4]** 3/18 10/2 10/19 33/1
**seventh [1]** 42/24
**several [4]** 7/22 16/19 32/7 32/8
**severe [3]** 40/23 48/20 48/21
**severity [1]** 48/21
**shared [1]** 29/23
**she [2]** 12/16 12/19
**shipment [3]** 8/20 30/23 31/8
**shipments [5]** 4/11 16/1 28/19 30/12 31/9
**shoot [1]** 39/11
**should [10]** 9/23 10/12 21/8 23/11 24/14 25/5 27/11 43/23 52/1 52/3
**show [5]** 9/15 10/11 32/1 32/1 36/17
**showing [2]** 15/5 16/13
**shown [2]** 50/8 50/8
**shows [1]** 47/19
**sign [2]** 35/7 42/17
**signed [4]** 13/4 34/24 35/22 50/24
**significance [3]** 5/21 8/4 13/10
**significant [7]** 22/6 28/19 28/25 29/1 29/12 34/14 44/15
**Significantly [1]** 25/8
**silent [2]** 41/23 42/1
**similar [1]** 30/14
**Similarly [1]** 21/16
**simply [1]** 32/1

**Sims [1]** 29/23
**since [1]** 17/21
**sincerity [1]** 46/10
**sir [14]** 7/6 9/19 25/22 27/6 27/17 27/19 28/9 30/4 30/8 35/23 37/2 40/17 51/9 52/9
**sisters [1]** 41/1
**sit [2]** 42/17 45/5
**sitting [2]** 2/5 45/6
**situation [2]** 36/15 46/18
**situations [1]** 16/20
**six [8]** 5/11 5/12 9/13 10/19 11/2 14/14 14/20 20/25
**six-day [1]** 14/20
**skill [1]** 21/15
**skilled [2]** 14/9 21/17
**skillful [1]** 14/17
**skillfully [1]** 11/12
**skills [1]** 44/24
**slip [1]** 30/24
**slips [2]** 30/20 31/1
**slowly [1]** 38/21
**smart [1]** 46/24
**snapshot [1]** 47/4
**so [73]**
**society [1]** 46/9
**some [17]** 2/17 5/14 14/5 15/21 17/14 18/4 19/1 21/3 29/25 30/1 31/8 42/12 45/21 47/14 49/20 50/5 51/20
**someone [4]** 39/5 39/11 40/21 42/7
**someplace [1]** 46/6
**something [4]** 30/18 42/3 46/2 49/21
**sometimes [6]** 43/8 43/13 43/14 43/17 43/19 44/6
**somewhat [1]** 28/12
**Somewhere [1]** 28/19
**soon [1]** 40/4
**sort [11]** 3/19 5/8 10/17 10/18 11/6 29/8 29/9 31/2 43/2 43/11 43/18
**sounds [1]** 44/6
**SOUTHERN [1]** 1/2
**speak [3]** 35/20 41/15 47/1
**speaker [2]** 42/20 44/23
**speaking [2]** 9/6 42/21
**special [4]** 2/5 27/3 50/13 50/22
**specific [8]** 4/8 4/10 15/18 15/25 20/7 23/25 34/8 34/10
**specifically [4]** 8/16 13/6 20/3 28/17
**specify [1]** 20/5
**spend [2]** 7/16 44/5
**spent [1]** 18/4
**spirit [1]** 13/17
**spot [1]** 33/12
**spot-on [1]** 33/12
**stack [1]** 43/15
**staff [1]** 52/12
**stage [1]** 8/18 9/16 10/2
**stand [2]** 9/10 42/16
**standard [1]** 11/7
**start [3]** 39/1 44/4 44/20
**started [1]** 35/25
**starting [1]** 10/7
**starts [1]** 18/3
**state [6]** 15/3 17/15 38/16 38/19 39/7 48/1

**stated [1]** 23/3
**statement [9]** 13/8 15/21 16/3 20/10 24/9 24/10 33/24 41/25 47/19
**statements [1]** 20/19
**states [40]** 1/1 1/4 1/11 2/2 2/4 2/23 4/1 4/3 4/5 4/7 6/6 6/9 10/15 10/20 11/13 11/15 12/16 12/24 13/8 15/6 15/8 17/22 18/21 20/4 22/8 22/9 24/23 29/20 34/6 34/15 34/17 38/20 39/1 43/16 43/25 47/14 47/15 51/15 52/1 52/3
**statistics [1]** 36/11
**status [2]** 12/4 45/12
**statute [2]** 12/25 44/5
**stems [1]** 51/5
**STENOTYPE [1]** 1/24
**still [4]** 26/13 47/24 48/3 50/10
**stipulated [3]** 19/17 23/19 24/20
**Stomarrow [4]** 37/5 46/13 46/13 50/7
**struck [1]** 43/1
**struggle [1]** 43/24
**Stull [1]** 2/5
**subject [2]** 6/7 19/9
**submissions [1]** 22/25
**submit [3]** 2/15 30/21 31/24
**submits [3]** 9/16 30/25 31/19
**Subsection [1]** 20/7
**substance [5]** 12/6 15/2 24/3 47/21 47/25
**substances [1]** 23/8
**substantial [2]** 21/3 21/19
**substantially [1]** 30/14
**subtract [1]** 25/15
**subtracted [1]** 49/23
**success [1]** 20/16
**such [7]** 15/7 34/5 34/7 38/20 38/23 40/24 41/7
**suddenly [1]** 18/6
**suffering [1]** 12/8
**sufficient [10]** 15/5 16/12 22/19 34/10 34/20 44/13 49/8 49/17 51/3 52/7
**suggest [1]** 9/11
**suggests [1]** 48/10
**Suite [2]** 1/14 1/18
**sums [1]** 29/12
**superceded [1]** 10/9
**Superseding [2]** 9/3 51/11
**supervised [4]** 26/15 27/2 35/14 50/16
**supplement [1]** 4/17
**support [6]** 25/2 28/13 36/3 36/13 38/24 39/25
**supportive [1]** 36/5
**supports [1]** 25/12
**Suppress [2]** 13/22 14/22
**suppressed [1]** 7/2
**suppression [3]** 5/10 14/20 36/6
**sure [10]** 14/6 15/19 25/11 27/22 37/13 37/23 41/3 41/16 43/9 49/24
**surrender [1]** 50/20
**surreptitiously [1]** 29/7
**suspect [1]** 21/1
**suspected [1]** 15/2

## T

**table [1]** 2/5
**tailor [1]** 44/18

**T**

**take [10]** 10/4 11/10 14/20 15/13 19/23 35/10 37/1 37/7 41/1 49/10
**taken [10]** 12/13 12/14 16/2 16/18 17/4 17/5 21/2 48/11 49/2 49/11
**takes [1]** 26/12
**talent [1]** 45/20
**talk [8]** 2/13 20/24 27/16 42/13 43/8 43/18 48/13 51/21
**talked [2]** 13/10 49/24
**talking [5]** 32/3 32/4 37/18 44/5 44/7
**talks [4]** 6/20 46/16 46/24 51/20
**tax [2]** 29/9 44/6
**tell [2]** 8/9 42/14
**ten [7]** 26/23 34/3 34/9 39/3 39/5 40/19 49/18
**tend [1]** 43/17
**terms [7]** 3/15 22/11 45/2 47/4 48/17 49/15 49/15
**test [1]** 10/19
**testimony [3]** 18/5 21/1 21/1
**testing [1]** 50/19
**text [1]** 24/19
**than [17]** 21/2 22/5 23/8 23/9 25/8 34/10 34/21 42/1 43/21 44/8 44/13 48/24 49/8 49/17 51/3 51/16 52/7
**thank [29]** 2/7 7/5 7/17 9/18 9/21 9/22 25/22 27/9 27/19 28/11 30/8 35/8 35/16 35/24 36/8 37/11 38/4 38/6 38/9 38/11 38/12 41/11 41/17 43/6 52/12 52/13 52/17 52/22 52/23
**that [385]**
**that's [31]** 2/10 4/13 6/12 8/4 8/11 10/19 11/8 13/25 14/1 19/24 20/1 20/16 24/22 24/25 25/10 27/3 27/9 27/15 28/8 30/25 31/18 32/12 39/21 41/10 42/20 44/12 44/17 45/8 47/10 48/14 51/1
**their [6]** 11/14 20/1 21/12 43/12 52/4 52/12
**them [10]** 10/1 27/8 30/3 31/11 36/7 43/5 43/14 45/7 45/8 46/23
**then [30]** 3/16 4/19 4/19 5/7 5/25 6/9 6/20 7/13 13/24 15/3 15/10 16/21 18/5 18/6 18/7 18/7 18/19 18/19 21/25 22/2 22/4 23/10 28/9 28/9 29/21 32/13 42/4 44/5 46/8 51/22
**theory [2]** 5/14 5/19
**there [59]**
**there's [19]** 5/5 8/6 18/19 18/20 22/1 22/3 25/18 26/23 33/14 36/10 38/23 40/5 43/2 43/2 43/21 43/22 47/20 47/20 48/10
**thereby [1]** 6/6
**thereof [2]** 31/14 32/20
**these [8]** 11/10 15/24 29/25 30/14 32/1 34/5 34/19 43/24
**they [26]** 4/9 5/19 9/25 11/23 14/11 15/7 17/15 19/21 20/14 21/15 21/15 23/23 30/14 36/5 38/18 38/24 39/7 39/7 43/13 43/16 45/6 47/1 49/4 50/21 52/4 52/10
**they're [1]** 43/16
**thing [9]** 15/23 20/23 38/22 40/24 41/3 43/23 45/21 49/20 52/14
**things [9]** 41/22 42/13 44/3 44/10 44/14

45/15 47/1 47/3 48/20
**think [42]** 3/8 3/12 3/19 7/15 8/2 8/2 8/4 9/20 9/23 11/5 14/10 14/19 16/14 17/23 17/24 18/25 22/20 24/10 27/20 32/8 32/20 32/25 33/10 35/11 36/11 36/14 36/17 40/10 41/13 41/15 43/14 44/16 45/2 46/9 47/18 48/25 49/8 49/12 50/4 51/7 52/1 52/6
**third [2]** 15/8 16/16
**this [116]**
**thoroughly [1]** 10/3
**those [13]** 16/9 16/20 17/14 19/22 22/22 30/6 30/13 40/8 43/18 44/14 47/1 51/14 52/20
**though [1]** 34/13
**thought [1]** 5/22
**thousand [2]** 23/8 32/8
**thousands [1]** 32/4
**threat [1]** 40/20
**three [15]** 2/25 10/23 14/8 14/10 22/5 26/12 26/18 27/7 31/5 31/10 39/10 44/7 45/17 46/15 49/21
**through [14]** 2/15 4/23 12/22 12/24 13/12 14/25 19/25 23/4 25/24 29/12 32/11 37/2 44/15 49/1
**throughout [2]** 11/14 36/5
**tide [1]** 38/15
**time [35]** 2/21 2/24 4/4 5/1 5/13 7/16 10/18 11/10 12/20 17/4 17/6 17/15 18/4 18/9 18/11 18/24 19/10 19/18 27/20 30/23 32/12 36/12 38/10 39/6 39/6 39/18 40/24 42/25 43/4 43/6 43/11 44/6 49/25 51/5 52/4
**times [3]** 20/16 41/19 46/15
**timing [2]** 4/25 5/5
**today [4]** 2/13 2/13 51/25 51/25
**together [1]** 41/18
**Tom [1]** 8/16
**too [1]** 43/8
**took [8]** 7/20 8/16 11/21 12/20 16/2 16/8 26/7 26/8
**top [2]** 31/18 40/20
**total [2]** 26/18 31/18
**touch [1]** 32/17
**tough [1]** 45/8
**toughly [2]** 49/13 49/14
**toward [1]** 6/22
**towards [2]** 11/6 49/22
**trafficking [5]** 28/17 29/5 29/9 29/19 33/21
**transcript [4]** 1/10 2/20 11/21 54/3
**TRANSCRIPTION [1]** 1/24
**transportation [1]** 29/19
**transported [1]** 29/14
**traveled [4]** 29/16 31/20 33/16 36/2
**traveling [1]** 12/16
**treatment [3]** 40/13 50/4 50/19
**trial [13]** 9/7 13/9 14/17 17/14 17/19 17/21 18/11 18/14 18/18 18/19 21/3 30/1 33/1
**tried [3]** 46/3 46/17 46/18
**trouble [1]** 43/8
**trucking [3]** 5/23 8/19 15/1
**true [2]** 8/14 13/25
**try [5]** 18/3 18/11 43/7 45/13 51/24

**trying [2]** 35/10 46/25
**turned [2]** 5/25 46/20
**turning [1]** 38/15
**two [25]** 2/14 4/23 10/22 12/5 22/4 23/12 23/15 23/23 24/1 24/4 24/6 25/7 25/15 26/6 26/18 26/21 30/10 31/15 33/1 37/16 41/22 44/7 44/10 44/14 48/20
**two-level [4]** 23/12 23/23 24/1 24/6
**type [1]** 47/22

**U**

**U-B-A-K-A-M-M-A [1]** 10/15
**U.S [5]** 1/14 13/11 29/15 42/11 52/8
**un [1]** 22/24
**un-provisionally [1]** 22/24
**unable [1]** 50/13
**uncomfortable [1]** 12/18
**unconditionally [1]** 23/2
**under [23]** 2/23 6/8 6/23 6/24 11/18 12/6 13/7 19/7 20/5 22/22 23/7 23/14 24/1 25/16 26/3 29/4 29/14 30/17 33/11 34/21 38/14 45/4 49/19
**under-represented [1]** 33/11
**underlined [2]** 23/17 24/19
**underlying [3]** 6/4 21/4 21/18
**underscore [1]** 29/4
**understand [6]** 6/10 7/4 24/5 28/4 48/25 48/25
**understanding [1]** 9/7
**understood [3]** 5/21 13/6 42/22
**undertaken [1]** 24/22
**undisputed [1]** 23/6
**undo [1]** 16/22
**unfairness [1]** 42/6
**UNITED [35]** 1/1 1/4 1/11 2/2 2/4 2/23 4/3 4/4 6/6 6/9 10/15 10/19 11/13 11/15 12/16 12/24 13/8 15/6 15/8 17/22 18/21 20/4 22/8 22/9 24/23 29/20 34/6 34/15 34/17 43/16 43/25 47/14 51/15 52/1 52/3
**universal [1]** 47/13
**unless [1]** 18/17
**unpack [1]** 29/21
**unspeakable [1]** 42/6
**until [2]** 12/18 39/5
**up [8]** 8/17 8/23 13/13 21/13 35/7 39/19 39/20 51/20
**upon [8]** 8/16 17/24 18/21 28/14 29/25 32/17 32/23 52/3
**upper [2]** 1/19 24/19
**upward [1]** 23/18
**upwards [1]** 26/5
**us [3]** 39/22 41/15 46/6
**use [3]** 48/1 48/2 48/2
**used [3]** 10/8 29/18 29/20

**V**

**various [3]** 4/3 31/13 39/8
**veracious [1]** 46/24
**verify [1]** 12/8
**verifying [1]** 12/5
**versa [1]** 36/17
**versed [1]** 6/14
**versus [5]** 2/3 10/15 10/20 18/21 43/17

# V

**very [20]** 7/25 10/3 12/22 17/2 17/2 25/25 28/16 33/22 36/5 36/16 36/16 39/6 43/2 44/1 44/4 44/23 48/8 48/13 51/25 52/17
**vice [1]** 36/17
**victims [2]** 28/5 43/13
**view [2]** 14/6 18/23
**vigorous [1]** 14/22
**voluntary [4]** 10/22 11/12 11/17 12/3

# W

**wage [1]** 46/2
**waiting [1]** 38/1
**waiver [1]** 13/12
**want [18]** 2/12 3/14 3/16 4/16 8/3 27/11 32/17 35/18 35/18 35/25 37/12 40/1 40/11 41/3 42/3 45/20 46/10 52/11
**wanted [2]** 21/19 42/13
**wants [1]** 18/7
**warehouse [2]** 8/23 29/20
**warrant [3]** 18/13 21/21 30/19
**warranted [1]** 24/21
**was [125]**
**wasn't [4]** 16/20 21/22 24/20 45/22
**waste [5]** 11/3 18/2 18/8 18/10 18/16
**way [8]** 8/15 9/11 11/15 18/12 29/4 32/23 41/25 46/4
**we [60]**
**we'd [3]** 40/9 41/1 41/7
**We'll [2]** 37/8 37/8
**we're [8]** 2/6 21/23 32/3 32/3 43/10 44/6 44/8 52/13
**We've [1]** 43/8
**week [2]** 12/13 51/25
**weeks [1]** 18/5
**weight [1]** 30/13
**weights [1]** 28/19
**well [24]** 6/14 9/23 10/3 13/19 14/16 16/17 17/10 20/24 24/10 31/3 32/5 32/16 33/19 34/18 40/19 42/5 42/19 44/2 46/1 47/2 47/11 48/6 48/17 51/12
**well-versed [1]** 6/14
**went [6]** 12/24 13/9 13/12 14/24 21/2 46/4
**were [32]** 3/18 5/9 5/19 5/22 11/22 11/23 16/9 17/13 17/22 19/14 19/16 19/21 19/21 22/13 23/4 24/4 30/10 30/12 30/14 30/16 31/1 31/10 32/7 32/7 33/20 40/25 44/3 44/22 45/11 45/12 50/18 52/20
**weren't [1]** 45/21
**what [57]**
**what's [2]** 21/12 44/13
**whatever [2]** 42/10 50/21
**whatsoever [1]** 20/15
**when [21]** 8/7 8/22 16/5 17/4 20/23 21/14 21/15 21/17 22/16 25/2 26/7 29/15 35/19 42/10 43/2 43/13 44/21 45/4 45/13 46/22 50/19
**where [9]** 6/3 8/19 16/20 18/8 21/20 22/9 31/24 34/16 46/8
**whether [28]** 5/23 8/10 10/5 10/21 10/22 10/23 10/25 11/1 11/3 11/11 11/16

11/17 12/3 12/11 13/2 13/25 15/13 15/21 15/23 16/16 16/23 18/1 19/10 20/13 22/17 23/6 28/2 45/21
**which [40]** 2/14 2/20 3/14 4/4 7/23 9/25 13/22 15/11 18/17 18/18 18/22 22/22 24/3 25/5 25/14 26/7 26/17 26/24 28/13 28/25 31/5 31/6 31/16 31/20 32/9 32/10 32/14 32/17 32/17 33/6 33/18 33/22 41/24 43/8 45/1 48/17 49/18 49/21 50/3 51/5
**while [5]** 15/19 30/11 37/25 39/17 50/10
**who [31]** 2/25 3/23 5/24 8/16 8/22 9/1 11/23 12/14 13/4 14/13 14/13 14/15 15/3 15/20 15/24 17/12 17/12 21/8 21/12 21/14 22/18 31/13 39/5 39/14 40/21 43/3 43/7 44/18 46/7 46/19 46/20
**whole [1]** 5/8
**whom [1]** 14/9
**whose [1]** 21/7
**why [7]** 10/11 14/1 25/1 32/17 33/18 42/14 42/20
**will [24]** 3/13 7/13 11/2 11/3 12/12 17/10 18/1 20/6 20/14 23/1 23/23 34/9 40/4 41/24 42/2 42/11 46/8 49/25 50/10 50/14 51/25 52/17 52/18 52/20
**wisely [1]** 7/16
**wish [1]** 28/7
**wishes [1]** 28/10
**withdraw [18]** 2/16 2/19 3/3 3/5 3/7 3/8 3/10 3/17 3/20 4/14 4/18 6/18 10/2 16/19 16/25 18/7 18/23 19/13
**withdrawal [11]** 7/9 9/15 10/12 10/25 11/2 11/3 16/17 17/10 18/1 18/13 18/20
**withdrawing [1]** 6/13
**withdrawn [4]** 3/8 4/15 10/6 25/13
**within [6]** 21/11 24/24 32/23 34/17 47/14 51/23
**without [5]** 7/11 15/11 29/8 29/9 42/8
**witnesses [4]** 5/12 17/12 17/14 17/15
**won't [1]** 29/24
**word [1]** 9/19
**words [1]** 29/7
**work [4]** 37/10 43/11 45/14 46/2
**worked [1]** 39/22
**working [1]** 43/9
**worth [1]** 32/8
**worthy [1]** 48/20
**would [57]**
**wrestle [1]** 43/7
**write [2]** 42/20 44/24
**writing [2]** 13/4 46/14
**written [4]** 4/17 12/24 42/12 46/13
**wrong [2]** 3/7 13/24
**wrote [2]** 42/2 48/24

# Y

**year [5]** 9/8 12/5 16/7 26/23 49/18
**years [18]** 7/22 14/18 16/9 26/12 27/1 28/18 34/3 34/9 35/15 38/25 39/3 39/5 40/19 43/1 49/6 49/7 49/21 50/17
**yes [19]** 6/12 7/6 16/25 27/18 30/5 35/21 35/25 36/8 36/22 37/18 37/21 40/7 40/12 40/15 40/16 41/10 51/10 52/16 52/17
**yesterday [1]** 11/25

**you [181]**
**you're [10]** 6/2 30/3 36/17 37/18 37/25 44/23 45/2 46/24 46/25 46/25
**you've [4]** 18/4 42/4 42/24 45/5
**young [1]** 46/7
**younger [1]** 46/19
**your [115]**
**yours [2]** 41/25 42/13
**yourself [4]** 37/8 46/23 47/1 47/9
**YRC [2]** 8/15 8/19