IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| LEONALDO HARRIS, | * | |
| Petitioner, | * | |
| v. | * | Criminal Case No.: PWG-13-cr-202 (Civil Case No.: PWG-18-cv-1747)[1] |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

* * * * * * * * * * * * * *

## MEMORANDUM AND ORDER

On July 22, 2015, Petitioner Leonaldo Harris pleaded guilty to conspiracy to distribute and possess with intent to distribute 1,000 kilograms or more of a mixture and substance containing a detectable amount of marijuana under 21 U.S.C. § 846, for which he currently is serving a 10-year sentence. *See* Plea Agreement 1,8, ECF No. 163; J. 2, ECF No. 229. He has filed this habeas action to vacate, set aside, or correct his sentence. 28 U.S.C. § 2255(a). For the reasons explained below, it is denied.

### Factual Background

In the statement of facts accompanying his plea agreement, Mr. Harris acknowledged that between September 2012 and April 2013 he made arrangements to ship marijuana from California to Maryland, where it was to be repackaged and distributed. *See* ECF No. 163-1. Authorities

---

[1] The ECF numbers cited in this Memorandum Opinion and Order refer to documents filed in the criminal case.

apprehended him on April 19, 2013, as he fled the scene of a controlled delivery of previously seized marijuana. *See id.*

Mr. Harris's drug shipments had been discovered two days earlier, when employees of YRC Freight ("YRC"), a freight shipping company, identified two suspicious parcels at a YRC facility in Pennsylvania. *See* Pa. Incident Report, ECF No. 64-8. A YRC weights and inspection coordinator opened and searched Mr. Harris's pallet at an offload site in Pennsylvania and discovered hundreds of kilograms of marijuana. *See* Sentencing Hr'g Tr. 8, ECF No. 238. Soon after, a YRC security manager called the Pennsylvania State Police, which obtained a search-and-seizure warrant. *See* Mot. to Suppress 4, ECF No. 64; Pa. Incident Report. The Pennsylvania State Police contacted the Maryland State Police, which likewise obtained a search-and-seizure warrant and took control of the two pallets. *See* Pa. Incident Report; ECF No. 64-9.

After pleading guilty, Mr. Harris moved to withdraw his guilty plea. *See* ECF No. 171. He went back and forth on this decision over the next several months, first moving to withdraw the withdrawal before finally attempting to resubmit it in a new motion. *See* ECF Nos. 187, 222. I denied Mr. Harris's motion to resubmit the withdrawal of his guilty plea. *See* ECF No. 224. The Fourth Circuit denied Mr. Harris's appeal on April 5, 2017. *See* ECF No. 243. Mr. Harris did not seek certiorari.

**Pre-Trial Motions**

Mr. Harris filed a number of pretrial motions, but the two most relevant at present are his November 4, 2013, motion to suppress, ECF No. 64, and his June 20, 2014 motion to reopen the record, ECF No. 122.

*The Motion to Suppress*

The motion to suppress challenged the evidence seized by the YRC weights and inspection coordinator, arguing it was the fruit of an unconstitutional warrantless search. *See* Mot. to Suppress 9. Mr. Harris argued that YRC employees were acting as instruments of the Government when they inspected the pallets. *See* Mot. to Suppress Reply 2-3, ECF No. 68. Mr. Harris pointed to YRC's agreement to cooperate with a federal cargo security program known as the Customs-Trade Partnership Against Terrorism (C-TPAT) as evidence that the Government had "knowledge and acquiesce" with regard to YRC's actions. *Id.* at 4.

I denied the motion to suppress on May 16, 2014, after a six-day hearing that featured 11 witnesses and 38 exhibits. In my ruling, I explained that Mr. Harris had not met his burden of showing that YRC acted as an agent or instrumentality of the Government, and that YRC's voluntary participation in the C-TPAT did not constitute mandated searching. *See* Jan. 13, 2014 Hr'g Tr. 229-270, ECF No. 80; May 15, 2014 Hr'g Tr. 47, ECF No. 120.

*The Motion to Reopen the Record*

Mr. Harris later filed his motion to reopen the record, urging me to reconsider my ruling on the motion to suppress in light of "new" evidence that, he said, showed the YRC employees had, indeed, acted as an "instrument of the Government." Mot. to Reopen R. 8-10 & n.4. In particular, the motion said the defense's expert, Barry Brandman, had reviewed his old files and discovered a C-TPAT PowerPoint presentation entitled "Supply Chain Security in a Post 9/11 Environment." *See id.* at 10; PowerPoint, ECF No. 122-3. The PowerPoint, made available to C-TPAT participants by the Government, contained suggestions for C-TPAT members (such as YRC) to be alert for during inspection of suspected contraband. *See* PowerPoint 2-6.

3

The motion explained that the PowerPoint was not previously introduced because it was not publicly available on the U.S. Customs and Border Protection ("CBP") website and defense counsel did not have access to C-TPAT's web portal.[2] *See* Mot. to Reopen R. 10. The Government, in response, argued that since an expert witness had access to the PowerPoint from his "old files" after the Motion to Suppress hearing, it must have been available to defense counsel prior the hearing. *See* ECF No. 132. The defense disputed the point, saying

> [I]t was not a lack of diligence on the part of the defense that resulted in the belated discovery and introduction of this document. After several subpoenas and painstaking research, the defense produced what the Government deems "thousands of pages of exhibits" in support of the argument that YRC's actions were fairly attributable to the Government.

Mot. to Reopen R. Reply 5, ECF No. 133. In addition, Mr. Harris's then counsel argued that the specific issue addressed by the PowerPoint became clear only after the Court's opinion on the motion to suppress:

> The Court's opinion ... made clear that the Court specifically required evidence establishing not only that members be explicitly directed to open and/or search but also required explicit evidence showing that "search", "inspect", "detect", and "open" were synonymous and included the act of opening. Without the Court's opinion, there was no reason to seek this document that the defense did not know existed as the defense believed the record was already clear that by repeatedly instructing YRC to "detect" or "inspect" cargo this was equivalent to telling or encouraging YRC to open and/or search cargo.

*Id.* at 4.

---

[2] "When the defense previously sought information from C-TPAT, the CBP objected to the subpoena on the grounds that, *inter alia*, it 'may lead CBP to disclose information in violation of The Privacy Act, 5 U.S.C. § 552a, and the Trade Secrets Act, 18 U.S.C. § 1905.'" Mot. to Reopen R. n.6.

I denied Mr. Harris's motion to reopen the record because Mr. Harris could not show that the evidence he sought to present was truly unavailable at the time of the suppression hearing, and because the issues he pursued were fully addressed at the hearing. Nov. 2014 Mem. Op. 1, ECF No. 134. I rejected Mr. Harris's argument that a "lack of diligence" was relevant to whether the PowerPoint was available, describing it as a "strategic decision" that did not entitle him to "another bite at the apple." *Id.* at 7-8. I found that even if the hearing were reopened, "the evidence identified in Defendant's motion would not alter my original ruling." *Id.* at 1.

## Motion to Vacate

On June 11, 2018, Mr. Harris filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. *See* Mot. to Vacate, ECF No. 249.[3] The motion alleges that his Sixth Amendment right to counsel was violated due to ineffective assistance of counsel. *See* Mot. to Vacate 2-3. Specifically, Mr. Harris argues that his then counsel was ineffective for failing to (1) have the retained expert witness present the C-TPAT PowerPoint presentation at the suppression hearing; and (2) subpoena and call a witness, YRC Vice President of Security and Compliance Manager Wayne "Butch" Day, to testify at the suppression hearing. *See id.* at 3-9.

As to his first contention, Mr. Harris argues that the defense's effort to reopen the record is itself evidence that the PowerPoint should have been presented at the original suppression hearing. *See* Habeas Reply 2, ECF No. 255. As to the second, Mr. Harris contends that "the testimony that Day would have provided was critical for the defense to have a meaningful opportunity of success." Mot. to Vacate 7-8. Specifically, Mr. Harris argues that the testimony would have discredited the Government's witness, Tommy Arrowood, because Mr. Day could

---

[3] The Government responded in opposition to the motion on September 26, 2018. *See* Habeas Opp'n, ECF No. 254. Mr. Harris filed a reply on October 23, 2018. *See* Habeas Reply, ECF No. 255.

5

have exposed how YRC encouraged its employees to work with law enforcement. *See* Habeas Reply 5-6.

Mr. Harris asks for an evidentiary hearing to "allow tangible evidence and testimony in order to make factual findings relevant to the combination of evidence and testimony that was not considered in the decision to deny defendant's Motion to Suppress based upon the deficient performance of counsel." Mot to Vacate 9. However, no hearing is required. *See* Loc. R. 105.6 (D. Md); *Rules Governing § 2255 Cases*, R. 8(a). The parties have fully briefed the pending motion. *See* ECF Nos. 249, 254, 255. Because I find that Mr. Harris's counsel was not constitutionally ineffective, I deny Mr. Harris's motion to vacate.

## **Standard of Review**

Under 28 U.S.C. § 2255(a), a petitioner in custody may file a motion to vacate, set aside, or correct his sentence on the ground that it "was imposed in violation of the Constitution or laws of the United States." The prisoner must prove his case by a preponderance of the evidence. *Brown v. United States*, Civil No. DKC-10-2569 & Criminal No. DKC 08-529, 2013 WL 4562276, at *5 (D. Md. Aug. 27, 2013). If the court finds for the prisoner, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). A prisoner cannot relitigate claims raised and rejected on appeal through a § 2255 motion "absent a[n] intervening change in the relevant law." *Vasquez v. United States*, Civil No. DKC-10-3328 & Criminal No. DKC-05-393, 2014 WL 823750, at *2 (D. Md. Feb. 28, 2014) (citing *United States v. Roane*, 378 F.3d 396 n.7 (4th Cir. 2004)). Similarly, a prisoner cannot raise a new issue that he did not object to at trial or raise on direct appeal absent "(1) 'cause' excusing his double procedural default, and (2) 'actual

prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 167 (1982).

## Timeliness

Preliminarily, I find that Mr. Harris's motion to vacate is timely. Under 28 U.S.C. § 2255, a motion ordinarily must be filed within one-year from the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255(f)(1). Final judgment following a circuit court's denial of appeal where the defendant did not seek certiorari review occurs when the 90-day period for seeking certiorari expires. *See Clay v. United States*, 537 U.S. 522, 532 (2003). "The time to file a petition for a writ of certiorari runs from the date of entry of the judgment . . . and not from the issuance date of the mandate." Sup. Ct. R. 13.3. The Fourth Circuit entered its judgment on April 5, 2017. *See* ECF No. 243. Therefore, the 90-day-period to seek certiorari expired on July 4, 2017. Mr. Harris filed his motion under § 2255 on June 11, 2018, within one year of the final judgment. His motion therefore was timely.

## **Discussion**

Ineffective-assistance-of-counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. To satisfy the *Strickland* standard, a petitioner must prove: (1) "that counsel's representation fell below an objective standard of reasonableness"; and (2) that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 694. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). This presumption is so strong that a petitioner alleging

ineffective assistance of counsel must show that the proceeding was rendered "fundamentally unfair" by counsel's affirmative omissions or errors. *Id.* at 700. When it comes to representation on appeal, "reviewing courts must accord appellate counsel the 'presumption that he [or she] decided which issues were most likely to afford relief on appeal.'" *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)). "Generally, only when ignored issues are clearly stronger than those presented [on appeal], will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (internal quotation marks omitted) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

## **Ineffective Assistance of Counsel**

### A. PowerPoint Presentation

Mr. Harris argues that his counsel was ineffective in failing "to investigate and locate evidence that C-TPAT explicitly instructs, teaches, or encourages its members to open and search cargo." Mot. to Vacate 4. Mr. Harris contends it was objectively unreasonable to do so, asserting:

> Competent counsel can be expected to undertake a thorough investigation of law and facts relevant to plausible options for the defense. And while this does not require counsel to investigate every conceivable defense, any limitation on counsel's investigation *must* be supported by reasonable judgment. [...] To make a reasoned judgment about whether evidence is worth presenting[,] one must know what it says.

Mot. to Vacate 6 (alterations in original) (quoting *Couch v. Booker*, 632 F.3d 241, 246 (6th Cir. 2011)).

Mr. Harris's counsel, however, was remarkably thorough. As I noted at sentencing, the defense team:

> [h]ired experts and we went through in painstaking detail the circumstances that led to the trucking company employee opening

8

> the pallet, finding what he suspected was [a] controlled substance,
> calling the Pennsylvania State Police, who then contacted Maryland
> authorities and it led to the search and seizure that led to the charges
> in this case.

Sentencing Hr'g Tr. 14-15. The Government characterizes defense counsel's efforts in this regard as "extraordinary," Habeas Opp'n 16, ECF No. 254, and I do not disagree.

Mr. Harris faults his attorneys for failing to produce the PowerPoint sooner. It should be noted, though, that the PowerPoint's existence came to light through Mr. Brandman, an expert defense counsel was diligent enough to seek out and retain. And while Mr. Harris's attorneys did not learn of the PowerPoint in time to introduce it as evidence in the suppression hearing, they sprang into action after Mr. Brandman disclosed it to them, pressing the Court to reopen the record and reconsider its ruling on the motion to suppress.

It is true that, in denying the motion, I stated that there was "no indication that Harris could not have asked his expert to perform the . . . search *before* the record was closed on the Motion to Suppress, had he thought to do so." Nov. 2014 Mem. Op. 8 (emphasis in original). That is not to say, though, that counsel's handling of the matter was objectively unreasonable. Indeed, the question before me at that time did not require me to determine whether counsel's conduct before the suppression hearing was constitutionally deficient. *See* Nov. 2014 Mem. Op. 5 (characterizing the issue of counsel's diligence as "irrelevant" to my ruling on the motion to reopen). Rather, as I explained in my memorandum opinion, the decision of whether to reopen a suppression hearing is a matter of discretion for the trial court. *See id.* (citing *United States v. Dickerson*, 166 F.3d 667, 678 (4th Cir. 1999)). In making this determination, a court considers, among other factors, "the timeliness of the motion, the character of the testimony, the effect of granting the motion, and whether the opposing party will be prejudiced by reopening the hearing." *Id.* (quoting *United States v. White*, 455 F. App'x 647, 651 (6th Cir. 2012)). My assessment, I explained, was that Mr.

Harris had had a "full and fair opportunity to present his best arguments" in the course of a hearing that spanned six days and pushed back the trial by more than eight months. *Id.* at 7.

That said, the subject of defense counsel's diligence did come up in the course of the parties' arguments on the motion to reopen, and, as it happens, I briefly touched on the issue in the memorandum opinion. *See id.* at 8. There, I agreed with the defense that its failure to press Mr. Brandman to conduct a more thorough search before the suppression hearing "does not evidence 'a lack of diligence.'" *Id.* (quoting Mot. to Reopen Reply 5). Counsel, I stated, had acted strategically, and its reassessment of that strategy after the hearing did not entitle Mr. Harris to a do-over. *See id.*

Under *Strickland*, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Tucker v. Ozmint*, 350 F.3d 433, 440 (4th Cir. 2003) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003)). Defense counsel's judgment at the time was that it had enough evidence to show that YRC's actions were fairly attributable to the Government. *See* Mot. to Reopen R. 10-11. In their motion to reopen, defense counsel explained that "only after the Court's opinion, when it was apparent that the Court was requiring language explicitly instructing or encouraging C-TPAT members to open and/or search cargo, was the defense able to discover this document that explicitly addresses what the Court stated was missing from the record." *Id.* at 11. Counsel's approach proved unsuccessful, but that does not mean it was objectively unreasonable. Neither does it demonstrate any lack of diligence.

Even if I were to find that defense counsel's performance was objectively unreasonable (it was not), I am unpersuaded that directing an expert witness to search for and then present the PowerPoint would have changed the outcome of the suppression hearing. Indeed, in my

10

memorandum opinion and order on Mr. Harris's motion to reopen the record, I stated that "the evidence identified in Defendant's motion would not alter my original ruling." Nov. 2014 Mem. Op. 1. "Simply put," I wrote, "Harris's ability to cherry-pick a single presentation that addresses some of the issues in my ruling does not alter my conclusion that neither Arrowood nor YRC was searching cargo at the government's instruction." *Id.* at 11. In conclusion, Mr. Harris's ineffective-assistance claim fails both prongs of *Strickland* and does not merit a new evidentiary hearing.

**B. Wayne "Butch" Day**

Next, Mr. Harris contends that defense counsel was ineffective for failing to subpoena and call Mr. Wayne "Butch" Day to testify at the suppression hearing. *See* Mot. to Vacate 7. He asserts that testimony from Mr. Day would have shown that YRC did in fact lift policies directly from C-TPAT and that YRC was encouraged to work with law enforcement agencies. *Id.* at 7-9; *see also* Habeas Reply. He argues the defense attorneys' failure to produce Mr. Day at the hearing was objectively unreasonable because Mr. Day was "vital to their allegation and he needed to be subpoenaed and called for a successful Motion to Suppress." Mot. to Vacate 8.

The Government counters that "[t]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney." Habeas Opp'n 17 (quoting *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008)). Such strategic decisions are entitled to "enormous deference." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). The Government further notes that defense counsel called several witnesses, some with job functions equivalent to or similar to Mr.

Day's.[4] Mr. Harris concedes that the selection of which witnesses to call is an issue of strategy but argues that counsel's decision in this instance was "highly prejudicial" to him. Habeas Reply 5.

Mr. Harris's claim fails both prongs of *Strickland*. The "enormous deference" to counsel's tactical decisions and their objective reasonableness is not overcome by the decision not to call this one witness, given that at least five other YRC staff members with similar job responsibilities were called to testify, some more than once. *See Terry*, 366 F.3d at 317. In addition, Mr. Harris has not shown a "reasonable probability" that the outcome of the suppression hearing would have been any different had defense counsel called Mr. Day to testify. *See Strickland*, 466 U.S. at 691. Mr. Harris argues that the Government has not conclusively demonstrated that Mr. Day's testimony *would not* have altered the outcome of the hearing. However, the burden is on Mr. Harris, not the Government, to show he is entitled to relief.

In sum, I find that Mr. Harris's claims fail both elements required by *Strickland*. I deny his request for evidentiary hearings.

### Certificate of Appealability

Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2254 or § 2255 provides that the court must "issue or deny a certificate of appealability when it enters a final order adverse to the petitioner." *Brown v. United States*, Civil No. DKC-10-256, Crim. No. DKC-08-529, 2013 WL 4562276, at *10 (D. Md. Aug. 27, 2013). This certificate "is a 'jurisdictional prerequisite' to an appeal from the court's order" that "may issue 'only if the applicant has made a substantial

---

[4] The Government notes that defense counsel called the following YRC employees to testify at the suppression hearing: "Clifford Shaw (YRC Corporate Security Manger); Patricia Scott (YRC Border Management Services Analyst II and C-TPAT point of contact for YRC); Robert Wood (YRC Dock Supervisor in North Carolina); Michelle Gage (YRC Credit Risk Manager); and Tommy Arrowood (YRC W&I Coordinator who inspected the Defendant's pallet, and who testified twice)." Habeas Opp'n 18.

showing of the denial of a constitutional right.'" *Id.* (quoting 28 U.S.C. § 2253(c)(2) and citing *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007)). A prisoner makes this showing "[w]here the court denies a petitioner's motion on its merits . . . by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong." *Id.* (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Because Mr. Harris has not shown that a reasonable jurist "would find the court's assessment of the constitutional claim debatable or wrong," and therefore has not made a substantial showing that his Constitutional rights were denied, this Court will not issue a certificate of appealability. *Id.*; *see* 28 U.S.C. § 2253(c)(2); *Miller-El*, 537 U.S. at 336-38; *Slack*, 529 U.S. at 484. However, this ruling does not preclude Mr. Harris from seeking a certificate of appealability from the Fourth Circuit. *See* 4th Cir. Loc. R. 22(b)(1).

## ORDER

Accordingly, it is this day, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Petitioner Leonaldo Harris's Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 249) IS DENIED;

2. The Clerk SHALL PROVIDE a copy of this Order to Mr. Harris.

Date:

Paul W. Grimm
United States District Judge